[S.F. No. 24529. Aug. 25, 1983.]

LEROY TWIGGS, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY
OF SAN FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

362

COUNSEL

Steve Emery Teich for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Robert R. Granucci and Donna B. Chew, Deputy Attorneys General, for Real Party in Interest.

Michael E. Nail, District Attorney, and John R. Vance, Jr., Deputy District Attorney, as Amici Curiae on behalf of Real Party in Interest.

## OPINION

**BROUSSARD, J.**—This case raises questions involving the duty of the prosecution to reveal the identity and location of a police informant whose testimony is material to the defendant's guilt or innocence, and the propriety of the prosecution's attempt to amend the information to charge prior felony convictions after the defendant has refused a plea bargain and invoked his right to a retrial.

Defendant seeks a writ of prohibition or mandate to prohibit the superior court from proceeding to retry him without ordering disclosure of the "identity" of the informant and striking the prior felony convictions which were added to the original charges as enhancements. We conclude that the trial court should hold further hearings to determine whether defendant is entitled to the relief requested.

Defendant was charged by information with possession of heroin for sale in violation of Health and Safety Code section 11351, and possession for sale of one-half ounce or more of heroin in violation of Penal Code section 1203.07. In addition, the information sought an enhancement for a prior felony conviction within the meaning of Penal Code section 667.5, subdivision (b).

Defendant pled not guilty and subsequently moved for an order that the district attorney reveal the identity and present whereabouts of an informant. Counsel's declaration in support of the motion alleged that the informant had contacted defendant with the express purpose of making a "controlled buy" for the police, and that defendant was entrapped into possessing the

heroin by the police informant who enticed defendant to hold the heroin. The trial court denied the motion, and a writ of prohibition/mandate was denied by the Court of Appeal on December 11, 1981.

At trial, defendant testified, elaborating on the entrapment defense. He testified that about December 6, 1980, a close friend, Larry Douglas, came to his apartment and pleaded with him to hold some heroin and paraphernalia. Defendant further testified that Douglas claimed that his life was in danger, that he could not safely keep the drugs in his own residence, and that he would give defendant $1,000 if defendant would package the drugs and hold them until Douglas returned in a few days.

According to defendant, Douglas returned on December 8, took some of the heroin, and gave defendant $40. The next day, the police entered defendant's apartment pursuant to a probation search condition, found the heroin, and arrested him.

The jury was unable to reach a verdict, and a mistrial was declared. Prior to retrial, defendant again filed a motion to reveal the identity and whereabouts of the informant. The motion was denied insofar as it requested the informant's identity because the defense already knew his identity. However, the trial court also ruled that the prosecution would have to furnish the last known address of the witness-informant. Defendant's attorney asked the court if the prosecution was to provide the current whereabouts of Larry Douglas. The court responded only that the order was for the prosecution to provide Douglas' last known address. The prosecution provided Douglas' last known address, but defendant was unable to locate him.

At the pretrial conference on defendant's second trial, defendant rejected an offer to plead guilty in exchange for a three-year prison sentence. Two or three days later, the district attorney moved to amend the information to allege that defendant had been convicted of five additional prior felony convictions and had served a separate term in state prison for each offense. Defendant opposed the motion, claiming that the prosecution had known of the prior convictions since before the original trial, and accused the prosecution of retaliatory vindictiveness in response to the defendant's assertion of his right to a retrial. The trial court expressed concern about the appearance of vindictiveness created by the late amendment, but accepted the prosecutor's explanation that she had some question whether the prior convictions fell within the scope of Penal Code section 667.5[1] and had waited until

---

[1]Section 667.5 provides in pertinent part: "Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows: [¶] (b) . . . [w]here the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior

she received the certified records from the Department of Corrections before moving to amend. The record suggests, however, that the prosecutor took no steps to investigate the prior convictions, and that she only discovered that the prior convictions could be charged after a different prosecutor showed her defendant's "prison package" at a joint pretrial conference involving this and another case.

Defendant again filed a petition for writ of prohibition/mandate, which was summarily denied by the Court of Appeal. This court then granted a petition for hearing and retransferred to the Court of Appeal with directions to issue an alternative writ. After the Court of Appeal discharged the alternative writ and denied the petition for issuance of a peremptory writ, we again granted a hearing.

1. *The duty to disclose an informant's identity.*

■ This court has set forth the rule regarding the prosecution's duty to disclose the identity of an informant. "When an informer is a material witness on the issue of guilt, the People must disclose his identity or incur a dismissal. (*Roviaro* v. *United States* (1957) 353 U.S. 53 [citations]; *People* v. *McShann* (1958) 50 Cal.2d 802, 808 [citations]; see Evid. Code, §§ 1041, 1042.) . . . What must be disclosed is the witness's 'identity'; not merely his name, but all pertinent information which might assist the defense to locate him." (*Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 851 [83 Cal.Rptr. 586, 464 P.2d 42].)

In so holding, we specifically disapproved decisions stating that the "prosecution automatically fulfills its obligation of disclosure when it reveals all that it knows, despite the inadequacy of such data to locate the informer." (*Eleazer* v. *Superior Court, supra,* 1 Cal.3d at pp. 851-852, fn. omitted.) Rather, we concluded that when "through police tactics or happenstance the informer becomes a material witness, the police should make such inquiries and arrangements as are reasonably necessary to enable the prosecution and defense to locate him." (*Id.,* at p. 852, fn. omitted.)

Moreover, the duty to disclose arises irrespective of the defendant's ability to obtain the information through his own efforts, because the prosecution knows from the outset whether the informer is a material witness, and the prosecution has greater investigatory resources and superior knowledge

separate prison term served for any felony; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which defendant remained free of both prison custody and the commission of an offense which results in a felony conviction."

of and contacts with the informer. (*Eleazer* v. *Superior Court, supra*, 1 Cal.3d at pp. 853-854.)

Defendant suggests that the facts of this case are similar to those presented in *People* v. *Frohner* (1976) 65 Cal.App.3d 94 [135 Cal.Rptr. 153], where the court, applying the rule stated in *Eleazer*, concluded that the prosecution had failed in its duty to locate the informer. (*Id.*, at pp. 106-107.) In *Frohner*, several factors led the court to conclude that the informant was a transient and likely to conceal his address, considerations that should have triggered prosecution efforts to maintain contact. (*Id.*, at p. 107.) The court concluded, however, that the prosecution had done virtually nothing to assure that the informant would be available for the defendant's trial. Thus, despite the fact that the defendant had the address that the informant had used at the preliminary hearing, defendant could not locate the informant, and the court properly concluded that under the circumstances the prosecution had failed in its duty to make reasonable efforts to locate the informant.

■ The Attorney General contends that *Frohner* is distinguishable because in that case the informant was clearly transient, so the prosecution had a greater duty to maintain contact, in which it failed. Relying on this distinction, and the language in footnote 10 in *Eleazer*,[2] to the effect that the prosecution's duty may be greater if the informant is transient, the Attorney General argues that because in this case the record does not affirmatively disclose that the informant was transient, the prosecution had fulfilled its obligation by providing the last known address. Two independent reasons compel us to reject this contention.

First, the language in footnote 10 of *Eleazer* merely illustrates that what constitutes reasonable efforts will vary depending on the circumstances of each case. The suggested alternative obligations were premised on the presumption that a person who maintains stability in his place of residence and employment, and who has no motive to conceal his whereabouts, can likely be subpoenaed when the defense merely obtains the person's address and telephone number. But where it is likely that the informant cannot be located by merely providing the last known address, the trial court is under an obligation to ascertain whether the prosecution has more information and whether it has made reasonable efforts to obtain information useful in lo-

---

[2]The Attorney General refers to the following language taken from footnote 10 in *Eleazer*: "The 'reasonable effort' required will, of course, depend on the facts of each case. If the informer has a regular abode and place of employment, simply obtaining his address and telephone number may suffice; if he is transient, or conceals his address, the law enforcement agency probably should make some arrangement for maintaining close communication with him." (*Eleazer* v. *Superior Court, supra*, 1 Cal.3d at p. 853, fn. 10.)

cating the informant. This obligation is necessarily required to implement the mandate of our decision in *Eleazer,* which "recognized the futility of a rule requiring disclosure of the information which the police know about a material witness informer without a further requirement that the police make efforts to obtain information useful in locating the informer as well." (*People* v. *Goliday* (1973) 8 Cal.3d 771, 778 [106 Cal.Rptr. 113, 505 P.2d 537].) Fairness to the accused requires that the prosecution bear the burden of showing that it has made reasonable efforts to maintain contact with the informant.

Second, and more important, focusing on whether or not the informant was transient distracts attention from the real problem in this case, the limited trial court order. The trial court's order merely required the prosecution to provide the informant's last known address. Defense counsel clearly sought a broader order but the judge specifically limited his order to the last known address.[3] The prosecution cannot be faulted for merely complying with the narrowly defined order of the court to produce the last known address but, the prosecution having complied, defendant was in no position to move for dismissal or otherwise seek relief from the trial court.[4] Thus, although *Frohner* could be distinguished on the ground that in that case there was a record from which the reviewing court could conclude that the prosecution had failed in its duty, the principle remains applicable that the trial

---

[3]At the motion to reveal the identity of the informant, the following colloquy occurred:

"Mr. Teich: Your Honor, the difficulty, I believe, is the whereabouts of the informant. Although we don't make any claim that we don't know who it is, we don't know where he is, and the case law, I believe, requires that we have access to him, that we be able to subpoena him. [¶] The People have an obligation to maintain contact with him, and that was the *Madrigal* case.

". . . . . . . . . . . . . . . . . . . .

"The Court: Larry Douglas. Whether or not he is the informant, if you have information on Larry Douglas, the last known address, that will be provided to the defense.

"Ms. Walters: I will see if I can find that out.

"Mr. Teich: Your Honor, might I, to flush out the Court's ruling, perhaps, is this an order that the whereabouts of Larry Douglas be made available?

"The Court: The last known address to the People, and phone number, if available, of Larry Douglas will be made known to the defense. That is the order.

"Mr. Teich: Might I—

"The Court: That is the order."

[4]It is likely that other events occurring prior to the retrial explain why the defendant did not return to the trial court to seek further relief when he could not locate the informant with the last known address provided by the prosecution. The trial court had denied a motion to reveal the identity of the informant prior to the first trial. The trial judge felt bound by the earlier order. Thus, defendant may have thought it futile to seek further relief from the trial court.

In addition, about one week after the court ordered disclosure of the last known address, the prosecution filed the amended information, which gave rise to the claim of vindictive prosecution. Trial was scheduled shortly thereafter, and the defendant acted to preserve the issues by seeking relief by writ of mandate and prohibition on both issues prior to the second trial.

court should require full disclosure of all the information available to the prosecution regarding the whereabouts of the informant. If disclosure of such information is inadequate to locate the informant, the court should inquire into what efforts, if any, the prosecution has made to maintain contact with the informant.

2. *Prosecutorial vindictiveness.*

Defendant also contends that the amendment of the information to charge five additional prior felony convictions two days after the defendant refused an offered plea bargain constituted prosecutorial vindictiveness. Such action was impermissible, defendant contends, because the prosecutor knew of the prior felony convictions before the first trial, but only sought to allege the prior convictions in retaliation for the defendant's exercise of his right to a jury retrial. The amendment subjects defendant to a greater potential penalty for exercising his right to a retrial, a situation defendant urges is prohibited by the due process clause.

The Attorney General and amicus curiae raise several arguments in response to defendant's claim of prosecutorial vindictiveness. First, they argue that where the new charges are predicated on conduct that was separate from that giving rise to the charges originally alleged, and the prosecution had not yet verified the prior convictions, no presumption of vindictiveness arose. Further, even if the circumstances gave rise to a presumption of vindictiveness, the prosecutor's explanation for the late amendment rebutted the presumption. Amicus urges that we are bound by the trial court's finding of fact on this issue. Finally, the Attorney General argues that recent cases of the United States Supreme Court and the California Court of Appeal have refused to extend the notion of prosecutorial vindictiveness to pretrial settings.

As we noted earlier, the trial court expressed concern over the possibility of retaliation suggested by the timing of the motion to amend, but the court accepted the prosecutor's unsworn explanation that she waited until she received the certified records corroborating that the prior convictions fell within the scope of Penal Code section 667.5 before moving to amend the information.

Defendant derives support for his contention that the timing of the prosecutor's actions created a "presumption of vindictiveness" from the decisions of the United States Supreme Court in *North Carolina* v. *Pearce* (1969) 395 U.S. 711 [23 L.Ed.2d 656, 89 S.Ct. 2072], and *Blackledge* v. *Perry* (1974) 417 U.S. 21 [40 L.Ed.2d 628, 94 S.Ct. 2098]. In *Perry,* the

defendant was charged in a North Carolina District Court with the misdemeanor of assault with a deadly weapon. Defendant was convicted, and given a sentence to be served after completion of the prison term he was then serving. Under North Carolina law, defendant had an absolute right to a trial de novo in the superior court. Following defendant's filing of a notice of appeal to the superior court, the prosecutor obtained a grand jury indictment, based on the same conduct, charging the defendant with the felony of assault with a deadly weapon with intent to kill and inflict serious bodily injury. The high court held that the due process clause prohibited the bringing of a more serious charge against defendant in response to his assertion of his statutory right to a trial de novo. (*Blackledge* v. *Perry, supra,* 417 U.S. at pp. 28-29 [40 L.Ed.2d at pp. 634-635].)

The court reached this conclusion despite the lack of evidence that the prosecution acted maliciously or in bad faith in seeking the felony charges. The court emphasized that actual retaliatory motivation need not be shown. Rather, due process dictates that a defendant may not be deterred from exercising his constitutional right to attack his conviction by the possibility of prosecutorial retaliation. (*Blackledge* v. *Perry, supra,* 417 U.S. at p. 28 [40 L.Ed.2d at p. 634].)

Due process does not prohibit the possibility of increased punishment in all cases of retrial after appeal, "but only those that pose a realistic likelihood of 'vindictiveness'." (*Blackledge* v. *Perry, supra,* 417 U.S. at p. 27 [40 L.Ed.2d at p. 634].) *Perry* explained that since a prosecutor has a considerable stake in discouraging appeals requiring trials de novo, if the prosecutor has the resources to discourage such appeals by increasing the potential penalty for pursuing the appeal, "the State can insure that only the most hardy defendants will brave the hazards of a de novo trial." (*Id.,* at pp. 27-28 [40 L.Ed.2d at p. 634].)

The same considerations that led the high court to condemn such prosecutorial conduct in the context of a postconviction appeal are applicable when the defendant asserts his right to a retrial after a mistrial. As a prosecutor would have a considerable stake in discouraging appeals requiring trials de novo, so too would the prosecution in a case such as this have a great interest in discouraging defendant's assertion of a retrial, particularly since the prosecution was unable to obtain a conviction in the first trial. Here, the defendant has endured a trial and a mistrial due to a hung jury, and when he asserts his right to a jury retrial rather than plead guilty and accept a prison term, he is faced with the possibility of a greater punishment than he could have received if the prosecution had secured a conviction, apparently as a result of pursuing his right to be tried by a jury on retrial. Such a situation calls for invoking the prophylactic rule enunciated

in *Perry* to protect against both the possibility that defendant will be deterred from exercising a legal right, as well as the danger that the state might be retaliating against the defendant for maintaining his innocence and facing a retrial.

The United States Supreme Court confronted the question of prosecutorial vindictiveness in the context of plea negotiations in *Bordenkircher* v. *Hayes* (1978) 434 U.S. 357 [54 L.Ed.2d 604, 98 S.Ct. 663]. In that case the defendant was charged with uttering a forged instrument, an offense punishable by a term of two to ten years. During plea negotiations with defense counsel present, the prosecution offered to recommend a sentence of five years in exchange for a plea of guilty. At the same meeting, the prosecutor said that if the defendant did not plead guilty, and "save the court the inconvenience and necessity of a trial" (*id.,* at p. 358 [54 L.Ed.2d at p. 607]), he would seek an indictment under the Kentucky Habitual Criminal Act, which would subject the defendant to a mandatory sentence of life imprisonment because of defendant's two prior felony convictions. Defendant chose not to plead guilty, and he was subsequently indicted on the more serious charge. The court held that "the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." (*Id.,* at p. 365 [54 L.Ed.2d at p. 612].)[5]

A significant factor in the court's reasoning was emphasized by its explanation of what was not involved in that case: "While the prosecutor did not actually obtain the recidivist indictment until after the plea conferences had ended, his intention to do so was clearly expressed at the outset of the plea negotiations. Hayes was thus fully informed of the true terms of the offer when he made his decision to plead not guilty. This is not a situation, therefore, where the prosecutor without notice brought an additional and more serious charge after plea negotiations relating only to the original indictment had ended with the defendant's insistence on pleading not guilty." (*Bordenkircher* v. *Hayes,* 434 U.S. at p. 360 [54 L.Ed.2d at p. 609], fn. omitted.) The court reasoned that in the "give-and-take" of plea bargaining, which flows from the "mutuality of advantage" to both defendants and prosecutors, there is no element of retaliation "so long as the accused is free to accept or reject the prosecution's offer." (*Id.,* at p. 363 [54 L.Ed.2d at p. 611].)

---

[5]*People* v. *Rivera* (1981) 127 Cal.App.3d 136 [179 Cal.Rptr. 384], held under similar procedural facts that the prosecutor's conduct did not deny due process under the California Constitution.

Thus, *Bordenkircher* v. *Hayes* specifically did not decide the issue of vindictiveness presented in a case such as this, where the record suggests that the more serious charges were not part of the "give-and-take" of plea negotiations. Rather, in this case, the circumstances strongly suggest that the prosecutor unilaterally imposed a penalty in response to the defendant's insistence on facing a jury retrial. This conclusion is buttressed by the other circumstances surrounding the prosecutor's action, particularly, as we have noted, the fact that the prosecution had been unable to secure a conviction in the first trial.

The conclusion that a presumption of vindictiveness arose in this case is consistent with the rule developed in cases in the Ninth Circuit Court of Appeals. For example, in *United States* v. *Ruesga-Martinez* (9th Cir. 1976) 534 F.2d 1367, the court suggested that because *North Carolina* v. *Pearce, supra,* 395 U.S. 711, and *Blackledge* v. *Perry, supra,* 417 U.S. 21 "seek to reduce or eliminate apprehension on the part of an accused that he may be subjected to retaliatory or vindictive punishment by the prosecution only for attempting to exercise his procedural rights . . . the mere *appearance* of vindictiveness is enough to place the burden on the prosecution." (*United States* v. *Ruesga-Martinez, supra,* 534 F.2d at p. 1369.) ■ Where the defendant shows that the prosecution has increased the charges in apparent response to the defendant's exercise of a procedural right, the defendant has made an initial showing of an appearance of vindictiveness. (*U.S.* v. *Burt* (9th Cir. 1980) 619 F.2d 831, 836.) The defendant need not demonstrate that the prosecution in fact acted with a retaliatory motive. (*Id.,* at p. 836.) Once this prima facie case is made, the prosecution bears a "heavy burden" of dispelling the appearance of vindictiveness as well as actual vindictiveness. (*United States* v. *Ruesga-Martinez, supra,* 534 F.2d at p. 1369; see also *United States* v. *Groves* (9th Cir. 1978) 571 F.2d 450, 453, and cases cited therein.)

■ The Attorney General argues, however, that the facts of this case are similar to those in *United States* v. *Preciado-Gomez* (9th Cir. 1976) 529 F.2d 935. In that case defendant was charged in a two-count indictment with making an illegal reentry into the United States on June 13, 1974, and with making a false representation of United States citizenship on that same date. A mistrial was declared after the jury could not reach a verdict. The government reindicted defendant on four counts: the two counts previously charged plus two additional counts charging earlier similar violations. The government's explanation for the added charges was that defendant claimed at the first trial that he had been issued a resident citizen card in a different name on the date of the alleged earlier illegal entry, a defense that the government considered to be misleading. The government therefore sought to prove that the earlier entry was illegal. The court of appeals concluded

that the United States Supreme Court did not intend to prevent such charging for conduct that was "unknown to the prosecutor or unproved by competent evidence prior to his arrest or original indictment." (*Id.*, at p. 941.) The court reasoned that such circumstances eliminate any per se assumption of vindictiveness. (*Id.*, at p. 940.)

Although *Preciado-Gomez* would on first blush appear to support the position of the Attorney General, the case is both distinguishable and out of line with the current of authority in the Ninth Circuit previously cited. The facts developed in *Preciado-Gomez* were "unknown" to the prosecutor prior to trial. In this sense, the case is similar to those where facts are related for the first time at the preliminary hearing or at trial, resulting in legitimate reconsideration of the charges alleged and a possible decision to add charges supported by the newly discovered facts. In *Preciado-Gomez* the prosecution had a rare but legitimate reason for adding the new charges: to strengthen, in its view, its case against defendant on the original charges.

Here, as we have stated, no new facts were developed at trial which could have legitimately caused the prosecution to add new charges for the retrial. The record suggests that the prosecution made no efforts to verify the prior convictions for this case, despite the fact that it knew of their existence before the first trial. The prosecution showed no interest in charging the additional prior convictions until the defendant insisted on a retrial, circumstances that plainly gave rise to a presumption of vindictiveness.

The Attorney General urges that recent decisions of the United States Supreme Court and a California Court of Appeal have refused to extend the doctrine of prosecutorial vindictiveness to pretrial settings, and therefore the doctrine is inapplicable in the instant case.

In *People* v. *Farrow* (1982) 133 Cal.App.3d 147 [184 Cal.Rptr. 21], defendant was charged with possession of a firearm by a convicted felon (Pen. Code, § 12021). The case was dismissed pursuant to Penal Code section 1382 because defendant had not been brought to trial within 60 days of the filing of the information. The prosecutor immediately filed a complaint alleging violation of Penal Code section 12021 as well as assault by means of force likely to produce great bodily injury and with a deadly weapon. Defendant moved to dismiss the assault charge, arguing that the timing of the prosecutor's actions suggested retaliation for defendant exercising his right to have the first case dismissed pursuant to Penal Code section 1382. The Court of Appeal rejected the notion that *Blackledge* v. *Perry, supra,* 417 U.S. 21, was controlling, instead concluding that "[u]nless the *Perry* rule is limited to the postconviction appeal context, it becomes totally unworkable. Prosecutorial discretion in determining the charges to be filed is

basic to the framework of our criminal justice system. [Citations.] Up to the time of verdict, the prosecution may amend the information to include additional offenses shown by the evidence at the preliminary hearing. To extend *Perry* to the pretrial and trial context would unduly hamper the legitimate exercise of this prosecutorial discretion." (*People* v. *Farrow, supra,* 133 Cal.App.3d at p. 152.)

Because of the distinctions between that case and *Perry,* the *Farrow* court held that the mere timing of the prosecutor's actions "was not sufficient to raise a reasonable likelihood of vindictiveness so as to shift the burden to the prosecution to explain the reasons for its exercise of prosecutorial discretion." (*Id.,* at p. 153.)

In *United States* v. *Goodwin* (1982) 457 U.S. 368 [73 L.Ed.2d 74, 102 S.Ct. 2485], defendant was charged with several misdemeanor offenses. He initiated plea negotiations with the prosecutor, but later sought a trial by jury in the district court instead of a trial before the magistrate. The case was transferred to the district court and assigned to an Assistant United States Attorney. The prosecutor reviewed the case and obtained an indictment that included a felony charge based on the same conduct. The court rejected the notion that the prosecutor's actions raised a reasonable likelihood of vindictiveness. The court concluded that the timing of the prosecutor's action in that case did not warrant a presumption of vindictiveness, reasoning that in the pretrial stage "the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. In contrast, once a trial begins—and certainly by the time a conviction has been obtained—it is much more likely that the State has discovered and assessed all of the information against an accused and has made a determination, on the basis of that information, of the extent to which he should be prosecuted. *Thus, a change in the charging decision made after an initial trial is completed is much more likely to be improperly motivated than is a pretrial decision.*" (*Id.,* at p. 381 [73 L.Ed.2d at p. 85, 102 S.Ct. at p. 2493], italics added.)

Neither *Goodwin* nor *Farrow* is dispositive in the circumstances presented by this case. Both *Goodwin* and *Farrow* suggest that to extend the presumption of vindictiveness to the pretrial setting would unduly hamper prosecutorial discretion. Such a rationale, however, does not support a conclusion in this case that there was not a realistic likelihood of vindictiveness. Rather, the reasons for refusing to extend the doctrine to pretrial situations counsel in favor of finding a presumption of vindictiveness in this case. Here, the situation is analogous to that in the postconviction context; no

new facts were developed through the preliminary hearing or trial, but defendant faces a risk of greater punishment apparently as a result of choosing to face a retrial rather than plead guilty. The facts of this case present the very situation that the *Goodwin* court suggested "is much more likely to be improperly motivated than is a pretrial decision." (*United States* v. *Goodwin, supra,* 457 U.S. at p. 381 [73 L.Ed.2d at p. 85, 102 S.Ct. at p. 2493].) The record in this case suggests that the prosecutor did nothing to discover whether the prior convictions fell within the meaning of Penal Code section 667.5, but only learned of that fact when another prosecutor provided defendant's "prison package" at a joint pretrial meeting involving this case and a separate case involving defendant. Under the circumstances of this case, a strong presumption of vindictiveness is warranted by the timing of the amended information.[6]

Finally, amicus curiae argues that even if the circumstances of this case gave rise to a presumption of vindictiveness, the trial court found that the presumption was rebutted. The remarks of the trial judge, however, suggest that he did not conclude that the prosecutor's actions were not vindictive, but rather that to disallow the amendment to the information would impinge upon prosecutorial discretion.[7] Thus, the trial court did not determine whether the prosecution had met its burden of rebutting the presumption of vindictiveness. In particular, the court relied upon the unsworn representations of the prosecutor and did not inquire why the prosecution showed no interest in evaluating the prior convictions until the pretrial conference.

Examining the motivation of a prosecutor in circumstances such as these is a difficult task. But requiring such examination is not meant to question the integrity of the prosecutor. Rather, because the principles discussed in this opinion are designed to relieve the defendant of the "apprehension of vindictiveness," once the presumption of vindictiveness is raised the prosecution bears a heavy burden of rebutting the presumption with an explanation that adequately eliminates actual vindictiveness. In this regard, the trial court should consider the prosecutor's explanation in light of the total circumstances of the case in deciding whether the presumption has been rebutted. The prosecution should be required to show that facts that would legitimately influence the charging process were not available when it exercised its discretion to bring the original charges.

---

[6]Although the principles of vindictive prosecution derive from United States Supreme Court precedent, we base our decision also on California Constitution, article I, sections 7 and 15, which provide an independent basis for protection against vindictive prosecution. (Cal. Const., art. I, § 24; see also *People* v. *Rivera, supra,* 127 Cal.App.3d 136, 144.)

[7]At the conclusion of the hearing on the prosecutor's motion to amend the information, the trial judge made the following remarks: "It does not appear that it was exclusively a retaliatory measure or even in part, although it can be inferred, at least in part. To foreclose them at this point it would, I think, be an invasion of prosecutorial authority."

The trial court should conduct a hearing, ordering the prosecution to disclose the present whereabouts of the informant. If disclosure of such information is inadequate to locate the informant, the court should require the prosecution to bear the burden of showing that it has made reasonable efforts to maintain contact with the informant. In addition, the trial court should hold an evidentiary hearing requiring the prosecution to meet its burden of rebutting the presumption of vindictive charging raised in this case by showing there was no actual vindictiveness.

Let a peremptory writ of mandate issue compelling the trial court to hold further proceedings in accordance with the views expressed herein.

Bird, C. J., Mosk, J., Kaus, J., Reynoso, J., and Grodin, J., concurred.

**RICHARDSON, J.,** Concurring and Dissenting.—I have no objection to my colleagues' ultimate disposition of this case, namely, a remand to the trial court to determine the nature of the efforts made by the People to maintain contact with the informant, and to reconsider the evidence bearing on defendant's claim that he was "vindictively" charged. I respectfully dissent from the majority's reasoning that leads it to the conclusion that he was "vindictively" prosecuted.

### 1. *Unavailability of Informant*

Although the majority first examines the People's duty to disclose the informant's "identity," it must be understood that defendant knew who the informant was, but did not know *where* he was. In the words of his counsel and referring to the informant's identity, "we don't make any claim that we don't know who it was." Both defendant and the People knew that the informant in question was Larry Douglas. The People were obligated to do no more than to "undertake reasonable efforts in good faith to locate" Douglas so that he could be subpoenaed as a witness. (*Eleazer* v. *Superior Court* (1970) 1 Cal.3d 847, 853 [83 Cal.Rptr. 587, 464 P.2d 42].) What is "reasonable" depends on the particular facts of the case. (*Ibid.*) Here, the trial court was told that the district attorney gave defense counsel the informant's last known address and telephone number. Apparently, this information was insufficient to locate the informant and it is appropriate for the trial court to make further inquiry to determine whether the prosecution's efforts were "reasonable" under the circumstances.

### 2. *Vindictive Prosecution*

The majority concludes that a "presumption of vindictiveness" arose from the People's conduct in this case. I wholly disagree. In my view, the

record before us discloses neither prosecutorial vindictiveness nor malice, nor ill will. Here, the district attorney amended the information three days after defendant's rejection of a plea offer. The amended information, however, contained additional charges wholly unrelated to the underlying charges of possession of heroin for sale. (Health & Saf. Code, § 11351; Pen. Code, § 1203.07.) The new allegations sought enhancement of the narcotics offenses for *six* prior prison terms for six other convictions.

In a very considerable speculative leap, the majority concludes that after a mistrial defendant faced the additional penalties "apparently as a result of pursuing his right to be tried by a jury on retrial" (*ante,* p. 369) and that "the circumstances strongly suggest that the prosecutor unilaterally imposed a penalty in response to the defendant's insistence on facing a jury retrial" (*ante,* p. 371). The only record support for these assertions is that defendant's rejection of the plea offer was followed three days later by the amendment to the information. However, the deputy district attorney explained her conduct with regard to this timing. While defendant's rap sheet did refer to the prior convictions, it also indicated that defendant had been in the custody of the California Rehabilitation Center (CRC). The deputy district attorney testified that she was not certain about the validity of the priors because of petitioner's commitment to CRC. When, on February 2, 1982, petitioner's complete state "prison package" was delivered to her, she confirmed the validity of the six prior convictions for section 667.5 enhancement purposes, and immediately moved to amend the information accordingly. Such an explanation is reasonable. The deputy district attorney was an officer of the court. There was no reason to disbelieve her. The trial judge accepted and believed her explanation. So did three appellate justices. So do I.

Moreover, as Justice Poché aptly noted in writing for a unanimous Court of Appeal, "Even assuming that a presumption of vindictiveness did arise, the court's ruling that the presumption was overcome is reasonable."

The People have called our attention to pertinent language from two recent cases. The majority unconvincingly attempts to distinguish and downplay *United States* v. *Goodwin* (1982) 457 U.S. 368 [73 L.Ed.2d 74, 102 S.Ct. 2485], and *People* v. *Farrow* (1982) 133 Cal.App.3d 147 [184 Cal.Rptr. 21] (hg. den. Sept. 2, 1982). In *Goodwin,* the high court observed: "There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent

of prosecution may not have crystallized. . . ." (*Goodwin, supra,* 457 U.S. 368, 381 [73 L.Ed.2d 74, 85, 102 S.Ct. 2485, 2493].)

"A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher* [v. *Hayes* (1978) 434 U.S. 357] the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." (*Ibid.,* fns. omitted.)

Similarly in *Farrow,* the appellate court sustained the addition of an assault with a deadly weapon count (Pen. Code, §§ 245, 12022.5) to an information charging a previously dismissed (*id.,* § 1382) possession of a firearm by a convicted felon (*id.,* § 12021). Defendant claimed a vindictive prosecution. In declining to extend the reasoning of *Blackledge* v. *Perry* (1974) 417 U.S. 21 [40 L.Ed.2d 628, 94 S.Ct. 2098], to a pretrial context, the *Farrow* court pointed out that "Prosecutorial discretion in determining the charges to be filed is basic to the framework of our criminal justice system. [Citations.] Up to the time of verdict, the prosecution may amend the information to include additional offenses shown by the evidence at the preliminary hearing." (133 Cal.App.3d at p. 152.) The court then concluded that application of the principle of *Blackledge* to amendments to an information before trial "would unduly hamper the legitimate exercise of this prosecutorial discretion." (*Ibid.*)

Petitioner never challenged, nor does he now, the validity of his prior convictions in Los Angeles and San Francisco Counties for grand theft and attempted grand theft in 1954, 1958, 1961, 1962, 1965 and 1966. For purposes of enhancement of the present charge of possession of heroin for sale within the context of section 667.5, no reason appears in this record why petitioner should be given, in effect, six "free" felonies.

Nonetheless, I concur in a remand of the case to the trial court for the purpose of inquiring into the reasonableness of the prosecution's efforts to maintain contact with Larry Douglas, as well as the presence of any "actual vindictiveness." I dissent, however, from the majority's conclusion that the record raises any "presumption of vindictive charging" in this case.