525 So.2d 938 (1988)
Dole DUNCAN, Appellant,
v.
The STATE of Florida, Appellee.
No. 84-552.
District Court of Appeal of Florida, Third District.
May 10, 1988.
Rehearing Denied June 23, 1988.
*939 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Margarita Muina Febres, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and BASKIN and JORGENSON, JJ.
JORGENSON, Judge.
Dole Duncan successfully moved for a mistrial based on prosecutorial misconduct. The state subsequently increased the severity of the charges against him. Following a second trial, Duncan was found guilty. He urges that the trial court erred in denying his motions to dismiss the charges against him on grounds of prosecutorial vindictiveness and double jeopardy. We agree that, under the circumstances of this case, double jeopardy attached.
Duncan was observed carrying away a box containing a vacuum cleaner/shampooer moments after the box had been locked inside a truck belonging to Harry Schiffley, the manager of a variety store. Schiffley, who had seen Duncan, shouted at him to stop and gave chase. Duncan ran to a nearby schoolyard, set the box down, and turned to face Schiffley. As he did so, Schiffley called to his daughter, Harriet Chauvin, to get the police. Schiffley and Chauvin testified at trial that, at this point, Duncan pulled a gun from his pocket and threatened to shoot Schiffley if he came any closer, whereupon Schiffley retreated to his truck. Chauvin located a policeman who, with Schiffley, began to run in the direction which Duncan had gone. When Duncan saw a second officer in pursuit, he dropped the box and continued his flight. He was apprehended a short while later in a residential area which was planted in shrubs and bushes. No gun was found on Duncan, nor did an immediate search of the area turn up a weapon. Three days after Duncan's arrest, a gun was found in the same residential area.
Duncan was arrested and charged with burglary, grand theft, and aggravated assault. Prior to trial, he filed a motion in limine to prohibit the state from displaying or introducing into evidence the gun found after his arrest. In support of his motion *940 he stated that he had been arrested on a Friday at a private residence; that a neighbor found a gun three days later on a Monday; and that no one would be able to testify that the gun found was used in the perpetration of any crime. The trial court reserved ruling pending presentation of evidence that would connect the gun to the offenses charged. Trial began, and, out of the jury's presence, the trial court heard testimony from the neighbor who had discovered the gun. She testified that she had seen the police apprehend Duncan late in the afternoon on Friday. On the following Monday a police officer came to her house and asked her to look for a gun, whereupon she walked around to her neighbor's yard and saw a gun lying on the ground. At the conclusion of her testimony, the trial court asked the state if there were any fingerprints on the gun. The state responded that no fingerprints had been found. The trial court then indicated its concern "about the remoteness in time, why there was no search for the gun or why, if there was a search for the gun on Friday, it could not be found, but it could be found on Monday." The trial court then ruled that the gun could not be exhibited to the jury and that no witnesses could mention that a gun was later located in the area where Duncan was apprehended.
Before the state gave its closing argument, the prosecutor requested a brief delay because his associate was "bringing something down that I require." During defense counsel's concluding argument to the jury, the prosecutor took from his jacket pocket the item he had "required"  a blue plastic toy gun  and twirled it around for the jury to see. When she was apprised of the prosecutor's conduct, defense counsel moved for a mistrial. The trial court noted that it also had seen the prosecutor playing with the gun and asked for an explanation. The prosecutor responded that the defendant was not alleged to have used a blue plastic gun; that there was nothing wrong with having a plastic gun in the courtroom; and that he had taken the gun from his pocket "for demonstrative reasons." Following this explanation, the trial court granted a mistrial. Outside the presence of the jury, the prosecutor continued to argue that he had originally intended to use the gun to make a point during his own closing argument but had forgotten to do so. The trial court noted the possibility that the prosecutor's actions had been unintentional but found, nevertheless, that the distraction he had caused during a critical portion of the defense closing argument necessitated granting a mistrial.
On the day the mistrial was granted, the prosecutor asked Duncan to take a proposed plea bargain. Duncan refused, and trial was reset. About one week later, the prosecutor again attempted a plea bargain which was again refused. Only then did the prosecutor file a second information charging grand theft and increasing the previous charge of burglary to armed burglary and the previous charge of aggravated assault to armed robbery. The prosecutor also added charges of carrying a concealed firearm, unlawful possession of a firearm while engaged in a criminal offense, and unlawful possession of a firearm by a convicted felon. At Duncan's retrial, the prosecutor was permitted to introduce the gun into evidence. The neighbor was allowed to testify that the police had asked her to be on the lookout for a gun and that, only a few moments after she had been alerted, she saw a gun in plain view on the ground in her neighbor's yard near the area where Duncan had been apprehended. The jury found Duncan guilty of armed robbery, carrying a concealed firearm, and unlawful possession of a firearm while engaged in a criminal offense. He elected to be sentenced under the guidelines and received a sentence of nine years' incarceration for the armed robbery conviction and five years' incarceration for the conviction of carrying a concealed firearm. Duncan now appeals his judgments of conviction and sentences.
Although a motion by the defendant for a mistrial will not ordinarily bar a retrial, even where the motion is necessitated by prosecutorial error, United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); accord, State v. Iglesias, 374 So.2d 1060 (Fla. 3d DCA 1979), there is a *941 narrow exception to the general rule. "Where a mistrial consented to by the defendant is based on bad faith prosecutorial or trial court misconduct intentionally designed to provoke a mistrial, the state is barred by double jeopardy from ever retrying the defendant for the same crime." Iglesias, 374 So.2d at 1062; see also Keen v. State, 504 So.2d 396 (Fla. 1987).
The rationale for the exception to the general rule permitting retrial after a mistrial declared with the defendant's consent is illustrated by the situation in which the prosecutor commits prejudicial error with the intent to provoke a mistrial. In this situation the defendant's choice to continue the tainted proceeding or to abort the proceeding and begin anew is inadequate to protect his double jeopardy interests. For, absent a bar to reprosecution, the defendant would simply play into the prosecutor's hands by moving for a mistrial. The defendant's other option  to continue the tainted proceeding  would be no option at all if, as we might expect given the prosecutor's intent, the prosecutorial error has virtually guaranteed conviction. There is no room in the balance of competing interests for this type of manipulation of the mistrial device. Or to put it another way, whereas we tolerate some incidental infringement upon a defendant's double jeopardy interests for the sake of society's interest in obtaining a verdict of guilt or innocence, when the prosecutor seeks to obtain an advantage by intentionally subverting double jeopardy interests, the balance invariably tips in favor of a bar to reprosecution.
Oregon v. Kennedy, 456 U.S. 667, 686, 102 S.Ct. 2083, 2095, 72 L.Ed.2d 416, 431 (1982) (Stevens, J., concurring). To provoke a mistrial intentionally would allow a prosecutor "to shop for a more favorable trier of fact, or to correct deficiencies in [his] case, or to obtain an unwarranted preview of the defendant's evidence." Id. (footnote omitted). The test, therefore, is one of prosecutorial intent. Under the narrow standard fashioned in Kennedy, only if governmental conduct is intended to "goad" the defendant into requesting a mistrial will double jeopardy bar a retrial.[1] The court must infer the existence or non-existence of such intent from the objective facts and circumstances of each case. Id., 456 U.S. at 680, 102 S.Ct. at 2092, 72 L.Ed.2d at 427 (Powell, J., concurring).
A review of the relevant facts and circumstances demonstrates a prosecutorial intent to goad Duncan into moving for a mistrial. First, the prosecutor sent for his toy gun apparently after studied thought and reflection. He deliberately directed his assistant to retrieve the toy from his desk drawer. In an equally deliberate manner, he drew the plastic gun from his pocket at the point when defense counsel argued to the jury that, if there had been a gun involved in the offense, someone would have seen it. The prosecutor took this action after the trial court had ruled that the discovery of the gun was too remote in time to allow its admissibility. This ruling came almost at the end of trial, with the state having only one additional witness to present. Before calling its last witness, the prosecutor specifically asked the court to clarify its ruling:
Prosecutor: May I have one moment? Judge, is it Your Honor's ruling that no witness can make mention of the fact that a gun was located or is it Your Honor's ruling that no gun can be exhibited in front of the jury?
Court: Both.
Prosecutor: All right.
In light of the trial court's ruling, the prosecutor's subsequent conduct appears to us calculated to effect a mistrial.
*942 Second, the prosecutor gained a distinct advantage from the mistrial. As a result of an evidentiary ruling by a different judge, he was able to introduce what he believed to be a key piece of evidence  the gun  at the second trial. We contrast this fact with those circumstances alluded to in United States v. Gonzalez, 719 F.2d 1516 (11th Cir.1983), cert. denied, 465 U.S. 1037, 104 S.Ct. 1312, 79 L.Ed.2d 710 (1984), and in United States v. Zielie, 734 F.2d 1447 (11th Cir.1984), cert. denied, 469 U.S. 1189, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985), and 469 U.S. 1216, 105 S.Ct. 1192, 84 L.Ed.2d 338 (1985). In both cases, the court found double jeopardy arguments to be meritless in part because "the government gained no advantage by the mistrial since the evidence adduced at the second trial was the same as that used in the first trial." Gonzalez, 719 F.2d at 1519; Zielie, 734 F.2d at 1459.
The mistrial, moreover, did not operate to place Duncan in the context of prejeopardy plea negotiations. It is true that on two occasions after the mistrial was declared, Duncan refused to take a proposed plea. Duncan's situation, however, is "analogous to that in the postconviction context; no new facts were developed [at trial], but defendant faces a risk of greater punishment apparently as a result of choosing to face a retrial rather than plead guilty." Twiggs v. Superior Court, 34 Cal.3d 360, 373-374, 194 Cal. Rptr. 152, 160, 667 P.2d 1165, 1173 (1983).
The trial court recited no objective facts or circumstances to buttress its conclusion that the prosecutor did not intend a mistrial. Its assessment of the subjective motivation of the prosecutor is not relevant to this analysis. We agree with the Oregon supreme court on remand in State v. Kennedy, 295 Or. 260, 274, 666 P.2d 1316, 1325 (1983), "that a court may infer from the character and the circumstances of the prejudicial conduct that it was so intended [to provoke the defendant to demand a mistrial] without having to obtain an admission to that effect. When a court draws that inference, a retrial is barred." Our own supreme court has recently issued its caveat that "[p]rosecutors may be walking a dangerous line that could result in a defendant's release from custody should the prosecutorial misconduct be deemed intentional, resulting in the application of the double jeopardy clause." Hill v. State, 515 So.2d 176 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988). On this record we find that the prosecutor crossed the line. We, therefore, reverse the judgments of conviction and sentences and remand with directions to discharge the defendant.[2]
Reversed and remanded with directions.
NOTES
[1] We decline Duncan's invitation to adopt as a matter of state constitutional law a broader standard to determine when double jeopardy will bar retrial following a defendant's motion for mistrial due to prosecutorial misconduct. In State v. Iglesias, 374 So.2d 1060 (Fla. 3d DCA 1979), we refused to expand the standard to encompass prosecutorial misconduct amounting to gross negligence. The same policy considerations adverted to in Iglesias obtain in the case presently before us. Further, the objective facts and circumstances of this case easily fit within the narrow standard of Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982).
[2] Duncan also argues that reversal is required because of prosecutorial vindictiveness. Duncan asserts that such vindictiveness was demonstrated by the state's filing a new information containing more severe charges after Duncan had successfully moved for a mistrial based on prosecutorial misconduct and had thereafter refused to plea bargain. Having concluded that double jeopardy attached, we do not address these additional grounds. "An appellate court is not obligated to consider and decide all questions suggested when the case is presented to it." 3 Fla.Jur.2d, Appellate Review § 281.