**COMMONWEALTH of Kentucky, Appellant,**

v.

**Rickey D. LEAP, Appellee.**

**No. 2004–SC–000138–DG.**

Supreme Court of Kentucky.

Aug. 25, 2005.

Rehearing Denied Jan. 19, 2006.

---

Gregory D. Stumbo, Attorney General of Kentucky, Susan Roncarti Lenz, Assistant Attorney General, Office of Criminal Appeals, Office of the Attorney General, Frankfort, Counsel for Appellant.

Brenda L. Bonecutter–Tulley, Newport, Counsel for Appellee.

## OPINION

SCOTT, Justice.

The Defendant–Appellee, Rickey D. Leap, was convicted of assault in the 4th degree, wanton endangerment in the 1st degree and of being a persistent felony offender (PFO) in the 1st degree. Upon appeal, the Court of Appeals remanded Leap's convictions for wanton endangerment and as a PFO for further findings by the trial court regarding vacation of several of the convictions. The Commonwealth sought relief in this court and we granted discretionary review. We now reverse the Court of Appeals and reinstate the judgment of the trial court.

The victim, testified that after meeting Appellant at a bar she agreed to take a ride with him. They left and went to another bar where they drank some more and smoked some pot. Her blood alcohol level when tested was .322. Eventually, they ended up in Leap's mothers' basement, where Leap beat her savagely and repeatedly. She did not know how her

clothes came off, but she remembers being in a car, and then the next thing she knew she was on the ground and he kept kicking her. He ultimately left her, beaten and nude on the side of the road. She had fractures on the left side of her face and the bone was split down the middle. Her eyeball muscle was trapped in the fracture and she did not have normal movement of her eyeball, while her vision was blurred. She had another fracture that would never heal completely. Currently she has a plastic insert behind her eye to keep it from sinking further into her skull.

She was in bed for a month, her head hurt, she was dizzy and could not focus. She also testified that the left side of her face sags and she would always have double vision.

Leap was initially indicted for assault 2nd degree, unlawful imprisonment 1st degree and PFO 1st degree. However, on the morning of the trial, the Commonwealth dismissed the unlawful imprisonment charge. The trial ended in a mistrial on February 7, 2002 due to a hung jury; whereupon it was reassigned for retrial on May 8, 2002.

On March 21, 2002, Leap was indicted for 1st degree wanton endangerment. At retrial, both indictments were tried together and he was found guilty of 4th degree assault, 1st degree wanton endangerment and as a PFO in the 1st degree and sentenced to ten (10) years imprisonment.

Upon appeal, the Court of Appeals remanded Leap's convictions for wanton endangerment and as a PFO. They found that the late addition of the 1st degree wanton endangerment charge following the mistrial, created a presumption of "prosecutorial vindictiveness." However, because the Commonwealth had not had an opportunity to rebut the "presumption of vindictiveness" post-trial, the Court of Appeals remanded the matter to the trial court for a hearing on the issue, placing the burden, however, on the Commonwealth to demonstrate a "neutral objective reason" why it could have not brought the wanton endangerment charge concurrently with the original indictment.

### PALPABLE ERROR

The Court of Appeals acknowledged in its opinion that the issue of "prosecutorial vindictiveness" was not properly preserved for appellate review, unless it was reviewable as "palpable error" under RCr 10.26. Thus, the allegation of error can only be reviewed under the "palpable error" rule to determine if (1) error resulted, (2) it affected the substantial rights of the party, and (3) whether or not it resulted in manifest injustice. RCr 10.26, see *Schoenbachler v. Commonwealth*, 95 S.W.3d 830, 836 (Ky.2003).

But first we must consider whether or not the allegation is in fact "error." Only then can we consider the questions of "palpable," "substantial rights" and "manifest injustice."

### THE APPLICABILITY OF "PROSECUTORIAL VINDICTIVENESS" PRIOR TO CONVICTION.

■ The Appellee contended, and the Court of Appeals held, on the facts at hand, that the presumption of "prosecutorial vindictiveness" as first enunciated in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), (overruled in part by *Alabama v. Smith*, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)), was applicable to additional charges brought following a mistrial. Thus, the Court of Appeals remanded the case back to the trial court for a hearing on any evidence the Commonwealth might present to overcome the presumption applied. In this regard, it must first be noted that *Pearce* **was actually two (2)**

**consolidated cases; one on behalf of the Appellant, Pearce, the other on behalf of the Appellant, Rice.**

"**Pearce was convicted** in a North Carolina Court.... The trial judge sentenced him to prison for a term of 12–15 years. Several years later he initiated a state post-conviction proceeding which culminated in the reversal of his conviction by the Supreme Court of North Carolina, upon the ground that the involuntary confession had unconstitutionally been admitted into evidence against him. He was retried, convicted and sentenced by the trial judge to an 8–year prison term, which, when added to the time Pearce had already spent in prison ... amounted to a longer total sentence than that originally imposed." *Id.* at 713, 89 S.Ct. 2072.

**Rice,** on the other hand "[p]leaded guilty in an Alabama trial court to four separate charges.... He was sentenced to prison terms aggregating ten years. Two and one-half years later the judgments were set aside ... upon the ground that Rice had not been accorded his constitutional right to counsel. (citation deleted) He was retried upon three of the charges, convicted and sentenced to prison terms aggregating 25 years." *Id.* at 714, 89 S.Ct. 2072. In *Pearce,* the United States Supreme Court held that "in order to insure the absence of such [vindictiveness], we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made a part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." *Id.* at 726, 89 S.Ct. 2072.

Later however, the *Rice* companion case in *Pearce* was overruled by *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). In *Smith,* a grand jury indicted respondent for burglary, rape and sodomy, all related to a single assault.

"He agreed to plead guilty to the burglary and rape charges in exchange for the state's agreement to dismiss the sodomy charge. The trial judge granted the state's motion to dismiss the sodomy charge, accepted respondent's guilty plea, and sentenced him to concurrent terms of 30 years imprisonment on each conviction. Later, respondent succeeded in having his guilty plea vacated and went to trial on the three original charges before the same trial judge. The jury found him guilty on all three counts. This time the judge imposed a term of life imprisonment for the burglary conviction plus a concurrent term of life imprisonment on the sodomy conviction and a consecutive term of 150 years imprisonment on the rape conviction. The judge explained that he was imposing a harsher sentence than that imposed following the guilty plea because the evidence presented at trial, which he had been unaware of at the time sentence was imposed on the guilty plea, convinced him that the original sentence had been too lenient." *Id.* at 794, 109 S.Ct. 2201.

On appeal, the Alabama Supreme Court reversed, holding that "the increased sentence created a presumption of vindictiveness similar to that set forth in *Pearce* ...." *Id.* The United States Supreme Court then reversed the Alabama Supreme Court, holding the application of the "presumption of vindictiveness" is limited to circumstances in which there is a reasonable likelihood that an unexplained increase in a sentence is a product of actual vindictiveness. **Notably, the rule has**

now been extended to prosecutors in post-conviction stages. *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

Later in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the court held it is not a violation of "due process" when the state prosecutor carries out a threat made during plea negotiations to have the accused re-indicted on more serious charges on which he is plainly subject to prosecution if he does not plead guilty to the offense with which he was originally charged. "The court has emphasized that the due process violation in cases such as *Pearce* and *Perry* lay not in the possibility that a defendant might be deterred from their exercise of a legal right (citation deleted), but rather in the danger that the state might be retaliating against the accused for lawfully attacking his conviction." *Bordenkircher* at 667, 668.

"The imposition of punishment is the very purpose of virtually all criminal proceedings. The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity. Motives are complex and difficult to prove. As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the court has found it necessary to 'presume' an improper vindictive motive. Given the severity of such a presumption, however— which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—the court has done so only in cases in which a reasonable likelihood of vindictiveness exists." *United States v. Goodwin*, 457 U.S. 368, 373 102 S.Ct. 2485, 2489 73 L.Ed.2d 74 (1982).

"There is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply **may come to realize that information possessed by the state has a broader significance.**" *Id.* at 381, 102 S.Ct. 2485. (emphasis added).

"As noted, United States Supreme Court cases have applied a presumption of prosecutorial vindictiveness to the filing of increased charges after a successful appeal, but have not extended this presumption to the pretrial context. The court has never considered a vindictiveness claim in the mistrial context. Courts in other jurisdictions have pointed out that a mistrial does not fall clearly into either the pretrial or the post-trial category." *State v. Johnson*, 232 Wis.2d 679, 605 N.W.2d 846, 853 (2000) (citing *United States v. Mays*, 738 F.2d 1188, 1190 (11th Cir.1984)).

"In cases like the one before us, the 7th Circuit has observed that 'courts have consistently held that no realistic likelihood of vindictiveness is found when a jury is deadlocked and both parties agree that a declaration of mistrial is necessary....' *Johnson* at 853 (citing *United States v. Whaley*, 830 F.2d 1469, 1479–80 (7th Cir. 1987), *abrogated in part on other grounds by United States v. Durrive*, 902 F.2d 1221, (7th Cir.1990)). Many state courts are in agreement. These courts generally reason that no appearance of vindictiveness is created when a prosecution adds charges after a mistrial caused by hung jury, because the defendant has exercised no protected right against which the prosecutor might retaliate." *Mays*, 738 F.2d at 1190.

On the other hand the California Supreme Court in *Twiggs v. Superior Court,*

34 Cal.3d 360, 194 Cal.Rptr. 152, 667 P.2d 1165, 1170 (1983) did uphold a presumption of "prosecutorial vindictiveness" following a mistrial situation. "Here the defendant has endured a trial and a mistrial due to a hung jury, and when he asserts his right to a jury retrial rather than plead guilty and accept a prison term, he is faced with the possibility of greater punishment than he could have received if the prosecution has secured a conviction, apparently as a result of pursuing his right to be tried by a jury . . . ." *Id.* at 1170.

In this case the Appellant was also charged with 1st degree PFO. For PFO purposes, there had to be a concurrent felony conviction. Having dropped the 1st degree unlawful imprisonment charge and having later realized from the mistrial how frail the evidence of 2nd degree assault was, there had to be another valid felony charge to support the PFO 1st degree. This decision was validated when the jury on the retrial again did not find the felony assault, but found the 1st degree wanton endangerment, an appropriate charge from the facts of the incident.

■ The prosecution has an obligation to the Commonwealth to properly charge and convict persons guilty of criminal conduct as defined in our Kentucky Statutes. Adding an additional felony charge, which was appropriate under the facts, in order to support the charge of PFO, was its job; otherwise the addition of the PFO charge would not be supportable. This is not evidence of a "vindictive motive," nor is the timing of the addition.

The first mistrial was in February 2002 and the retrial was ordered for May 8, 2002. Adding the charge on March 21, 2002, was appropriate and even necessary as anything later would have put the scheduled trial, or additional indictment, at risk. Thus, the timing here is not evidence of vindictiveness.

■ Finding no evidence of such in this record, we are not disposed to extend the presumption of "prosecutorial vindictiveness," as enunciated in *Pearce* and *Perry,* to the pretrial setting. As set out in *Smith,* "[b]ecause the *Pearce* presumption may operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct . . . we have limited its application like that of 'other judicially created means of effectuating the rights secured . . . ,' to circumstances where its objectives are thought most efficaciously served. . . . Such circumstances are those in which there is a reasonable likelihood . . . that the increase in sentence is the product of actual vindictiveness on the part of the . . . authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Alabama* at 799, 109 S.Ct. 2201. (internal citations omitted).

Thus, we now reverse the Court of Appeals to the extent of its remand for a hearing and finding on "prosecutorial vindictiveness" and reinstate the trial judgment and sentencing in full.

In doing so, we are cognizant of the fact that the Court of Appeals found the "instructional error" to be harmless. Thus, we do not otherwise consider the Appellee's arguments regarding "double jeopardy" and the "inclusion of misdemeanor language in the instructions" as they are not within the scope of the discretionary review granted. *Commonwealth v. Smith,* 5 S.W.3d 126, 129 130 (Ky.1999).

For the reasons stated, the opinion of the Court of Appeals is reversed.

All concur.