**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 14 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

HOWARD M. BOOS,

      Defendant-Appellant.

No. 97-6329
(D.C. No. CR-97-24-A)
(W.D. Okla.)

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

WAYNE R. GUNWALL,

      Defendant-Appellant.

No. 97-6330
(D.C. No. CR-97-24-A)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **HENRY**, and **LUCERO**, Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Howard M. Boos and Wayne R. Gunwall both were convicted of one count of conspiracy to impede and injure officers of the United States from discharging the lawful duties of their offices, in violation of 18 U.S.C. § 372, and two counts of corruptly endeavoring to obstruct or impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a). Boos raises four claims on appeal: (1) § 7212 exceeds Congress' legislative power under the Commerce Clause; (2) his convictions violate the Double Jeopardy Clause; (3) he was selectively and vindictively prosecuted; and (4) a $9000 fine imposed by the district court was inconsistent with his ability to pay. Gunwall appeals his convictions on four separate grounds: (1) he was vindictively prosecuted; (2) the district court should have excluded evidence of his affiliation with "We The People," a tax protestor group; (3) the district court erred in instructing the jury on the definition of "corruptly"; and (4) the evidence was insufficient to support a finding that he acted corruptly. We affirm.

**BACKGROUND**

These two consolidated cases arose out of a scheme between Boos and Gunwall to file false liens against two Internal Revenue Service (IRS) agents who tried to collect taxes owed by Boos. On June 8, 1993, Gunwall filed two UCC-1 financing statements with the Oklahoma County Clerk's Office listing IRS agents

Glen Phipps and Lonnie Hartline as debtors and stating that each owed Boos, and Gunwall as Boos' designee, twenty million dollars in silver.

Gunwall told an IRS investigator that he was acting as a third party and would receive a fee if any money were collected. Gunwall also stated that the liens were filed by persons who felt that they had suffered an injustice, and that the liens were a way to get back at the IRS agents. Boos, who had signed the liens, explained that IRS agent Hartline had done his job by filing liens against Boos, and that Boos was doing his job by filing liens against the agents. As a result of the liens, and under district counsel's orders, Hartline's efforts to collect taxes from Boos were delayed for several months while the issue of the liens was being resolved.

On October 12, 1993, a hearing on the liens against the IRS agents was held in the Northern District of Oklahoma. The court, inter alia, found the liens to be invalid, null, and void, ordered them to be removed, and ordered Boos as well as any associates to file no further UCC-1 forms.

Meanwhile, in June 1993, an FBI search of the Colorado headquarters of "We The People," a tax protestor group, turned up a file for Boos. The file contained a letter from Boos to Roy Schwasinger, the leader of "We The People" and a promoter of filing UCC-1 financing statements. The letter gave Hartline's name, address, and phone number, his wife's name and place of employment, and

the legal description of his home—information which also appeared on the UCC-1 form filed against Hartline. The letter stated: "If there is anything else needed to put a lien on his property, or do what you want to do, please call me." The file also contained a copy of a summons served by the IRS on a bank where Boos had a trust account, nominated "Justin Eathan Trust," into which he had been making deposits. Handwritten on the copy was the information about Hartline which appeared in the letter. Furthermore, the file included proposed UCC-1 forms naming Phipps and Hartline as debtors. In addition, among the records seized at the headquarters was a list of names, addresses, and phone numbers which included information on Gunwall.

On March 4, 1997, Boos and Gunwall were charged with conspiracy to impede and injure officers of the United States discharging the lawful duties of their offices, in violation of 18 U.S.C. § 372 and 18 U.S.C. § 2, and two counts of corruptly endeavoring to obstruct or impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a) and 18 U.S.C. § 2. On May 23, 1997, a jury found both defendants guilty on all three counts. Boos and Gunwall appeal.

## DISCUSSION

The district court had jurisdiction under 18 U.S.C. § 3231. We exercise jurisdiction under 28 U.S.C. § 1291.

Boos raises four claims on appeal.  We address each in turn.

A.  Commerce Clause

Boos claims that the district court erred in denying his motion to dismiss the two charges of corruptly endeavoring to obstruct or impede the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a).[1] Relying on United States v. Lopez, 514 U.S. 549 (1995), Boos argues that § 7212(a) exceeds Congress' legislative power under the Commerce Clause because the provision is not commercial in nature.  We review Boos' challenge to the constitutionality of § 7212(a) de novo.  See United States v. Pearson, ___ F.3d ___, 1998 WL 614411, at * 2 (10th Cir. Sept. 15, 1998).

Boos' claim is misplaced.  Section 7212(a), a provision in the Internal Revenue Code, is authorized not by the Commerce Clause, but by the taxing provisions of the Constitution.  See Baird v. Koerner, 279 F.2d 623, 627 (9th Cir.

---

[1] 26 U.S.C. § 7212(a) states, in relevant part:

> Whoever corruptly or by force or threats of force . . . endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force . . . obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5000, or imprisoned more than 3 years, or both . . . .

1960) (Congress enacted Internal Revenue Code under taxing provisions of Constitution); see also United States v. Lawson, 670 F.2d 923, 927 (10th Cir. 1982) (congressional power to tax "embraces all conceivable powers of taxation") (citing Brushaber v. Union Pac. R.R., 240 U.S. 1, 12-13 (1916)).  Article I, Section 8, clause 1 of the Constitution provides that "Congress shall have Power To lay and collect Taxes," and the Sixteenth Amendment authorizes Congress to lay and collect income taxes without apportionment.  Furthermore, Article I, section 8, clause 18 empowers Congress to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution."  The Necessary and Proper Clause has long been interpreted to confer upon Congress broad implied powers to adopt "all means which are appropriate" and "are plainly adapted" to the exercise of a legitimate legislative power.  McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 421 (1819); accord The Legal-Tender Cases, 110 U.S. 421, 440 (1884).  Section 7212(a), which criminalizes certain attempts to interfere with the administration of the internal revenue laws, is adapted appropriately and plainly to furthering Congress' legitimate legislative power to lay and collect taxes.  As such, § 7212(a) is a constitutional exercise of congressional power.  See United States v. Varani, 435 F.2d 758, 762 (6th Cir. 1970) (section 7212(a) is "well within the constitutional powers of Congress"); see also United States v. Bailey, 131 F.3d

152, No. 97-5047, 1997 WL 759073, at * 1 (10th Cir. 1997) (rejecting claim that § 7212(a) is "not commercial in nature and cannot be regulated under the Commerce Clause" as "tautological construction[] incapable of rational resolution") (unpublished disposition); cf. United States v. Collins, 920 F.2d 619, 629 (10th Cir. 1990) (upholding 26 U.S.C. § 7201, provision criminalizing income tax evasion, as "plainly" within Congress' constitutional powers to lay and collect taxes).

## B.  Double Jeopardy

Boos claims that the district court erred in denying his motion to dismiss on the ground of double jeopardy.  Relying on United States v. Halper, 490 U.S. 435 (1989), Boos argues that he was already punished in the prior civil proceeding in the Northern District of Oklahoma.  There, he was permanently enjoined from filing additional liens or other frivolous documents against IRS agents and using the United States mails to interfere with the IRS, and he was assessed costs.  We review the district court's denial of Boos' motion to dismiss on double jeopardy grounds de novo.  See United States v. Cordoba, 71 F.3d 1543, 1545 (10th Cir. 1995).  We review the court's underlying factual findings for clear error.  Id.

The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend.

V. The clause protects against "the imposition of multiple <u>criminal</u> punishments for the same offense." <u>Hudson v. United States</u>, 118 S.Ct. 488, 493 (1997) (emphasis original). Boos relies on <u>Halper</u>'s analytical approach to double jeopardy, but this approach has been discredited by <u>Hudson</u>.[2] <u>Hudson</u> reaffirmed the approach of <u>United States v. Ward</u>, 448 U.S. 242 (1980). <u>See</u> <u>Hudson</u>, 118 S. Ct. at 491. Under that approach, courts first ask whether the legislature, "'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference'" for labeling the punishment civil or criminal. <u>Id.</u> at 493 (quoting <u>Ward</u>, 448 U.S. at 248). Where the legislature has indicated an intention to establish a civil penalty, courts must "inquire[] further whether the statutory scheme was so punitive either in purpose or effect as to transfor[m] what was clearly intended as a civil remedy into a criminal penalty." <u>Id.</u> (second alteration original) (internal quotations and citations omitted). "'[O]nly the clearest proof'

_____

[2]According to <u>Hudson</u>, the <u>Halper</u> approach saw

> the imposition of "punishment" of any kind [as] subject to double jeopardy constraints, and whether a sanction constituted "punishment" depended primarily on whether it served the traditional "goals of punishment," namely "retribution and deterrence." Any sanction that was so "overwhelmingly disproportionate" to the inquiry caused that it could not "fairly be said <u>solely</u> to serve [the] remedial purpose" of compensating the government for its loss, was thought to be explainable only as "serving either retributive or deterrent purposes."

118 S. Ct. at 494 (emphasis and second alteration original) (citations omitted).

will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Id. (quoting Ward, 448 U.S. at 249).

The district court, ruling before Hudson was decided,[3] denied Boos' motion to dismiss on the ground that the Northern District proceedings were remedial in nature. Under Hudson, we hold that Boos' claim fails. The permanent injunction and assessment of costs were imposed by the Northern District under the authority of Federal Rules of Civil Procedure 65(d) and 54(d) respectively. Because Boos does not offer any proof, much less "the clearest proof," that these civil remedies were "so punitive in either purpose or effect as to transform what was clearly intended as a civil remedy into a criminal penalty," Hudson, 118 S. Ct. at 493, we must reject his double jeopardy claim.[4]

---

[3]The district court ruled on Boos' motion to dismiss on April 14, 1997. (Tr. 1, 24.) Hudson was decided on December 10, 1997. See Hudson, 118 S. Ct. at 488.

[4]Boos also claims that his being subject to contempt for failure to comply with the district court order constitutes punishment for double jeopardy purposes. This claim lacks force, as the mere possibility of contempt cannot constitute punishment, civil or criminal.

C. Selective and Vindictive Prosecution

Boos claims that the district court erred in denying his motion to dismiss on grounds of selective and vindictive prosecution. We review the district court's denial of the motion to dismiss on the ground of selective prosecution for abuse of discretion. See United States v. Furman, 31 F.3d 1034, 1037 (10th Cir. 1994). The claim of vindictive prosecution is a mixed question, wherein we review the district court's factual findings for clear error, and the legal principles guiding the district court de novo. See United States v. Contreras, 108 F.3d 1255, 1262 (10th Cir.), cert. denied, 118 S. Ct. 116 (1997).

To prevail on a claim of selective prosecution, Boos must show that "he has been singled out for prosecution while others similarly situated generally have not been proceeded against for the type of conduct forming the basis of the charge against him." Furman, 31 F.3d at 1037 (internal quotations and citation omitted). In addition, he must prove that the government's selection of him for prosecution "was invidious or in bad faith and was based on impermissible considerations such as . . the desire to prevent the exercise of constitutional rights." Id. (quotations and citation omitted).

In this case, Boos alleges that he was singled out for prosecution because of his status as a tax protestor, and because of his association with other tax protestors. However, Boos offers no evidence that he was singled out for

- 10 -

prosecution while others similarly situated have not been prosecuted, or that the government selected him because of the exercise of his First Amendment right of association. Instead, he speculates that "[o]f the literally hundreds of thousands of tax violators in the form of failures to timely file, making false statements, evasion crimes, and others of that nature, it seems that the statistical data would support an allegation of selective prosecution." Mere conjecture does not meet the "rigorous standard for the elements of a selective-prosecution claim." United States v. Armstrong, 517 U.S. 456, 468 (1996); see Furman, 31 F.3d at 1037 (district court did not abuse its discretion in dismissing claim of selective prosecution based on "conclusory allegations"). Accordingly, the district court did not abuse its discretion in denying Boos' motion to dismiss.[5]

To succeed on his vindictive prosecution claim, Boos must show either actual vindictiveness or a reasonable likelihood of vindictiveness, which would raise a presumption of vindictiveness. See Contreras, 108 F.3d at 1262. "While a prosecutor may penalize a defendant for violating the law, a prosecutor may not

[5]Boos attributes his failure to come up with "statistical data" for his selective prosecution claim to the district court's denial of his discovery request for such information, and apparently appeals that denial as well. However, "[t]he justifications for a rigorous standard for the elements of a selective-prosecution claim . . . require a correspondingly rigorous standard for discovery in aid of such a claim." Armstrong, 517 U.S. at 468. As a threshold requirement, Boos must make "a credible showing of different treatment of similarly situated persons." Id. at 470. As Boos presents no evidence of selective prosecution, he cannot avail himself of discovery for this claim.

punish a defendant for 'exercising a protected statutory or constitutional right.'" Id. (quoting United States v. Goodwin, 457 U.S. 368, 372 (1982). Thus, we must focus on "whether, as a practical matter, there is a realistic or reasonable likelihood of prosecutorial conduct that would not have occurred but for hostility or punitive animus toward the defendant because he exercised his specific legal right." Id. (internal quotations and citations and quotations omitted).

Although unclear, Boos appears to allege that his prosecution was vindictive because he obeyed the injunction issued by the Northern District and so could not be cited for contempt, prompting the government to "increase the ante by filing criminal charges." As additional support, Boos cites the fact that the government could have filed criminal charges against him in 1993, at the time of the civil proceedings in the Northern District, but instead choose to wait until 1997.

Boos fails to show either actual vindictiveness or a reasonable likelihood of vindictiveness. Boos has not exercised any specific "protected statutory or constitutional right" against which the government may have retaliated, Contreras, 108 F.3d at 1262 (quoting Goodwin, 457 U.S. at 372), and we can find no precedent for his novel claim that a prosecution following compliance with a civil

order is vindictive.[6]  Furthermore, Boos does not present any evidence that the

government prosecuted him in retaliation to his compliance with the Northern

District order.  On the other hand, as the government points out, the United States

had ample reasons for proceeding against him in two separate proceedings.  The

government could have wanted the liens filed against the IRS agents removed as

quickly as possible, and the separate civil proceeding offered an expedited means

of relief as well as a lower standard of proof.  Moreover, the criminal investigation

had not been completed.  As Boos fails to show a reasonable likelihood of

---

[6]Boos relies on Blackledge v. Perry, 417 U.S. 21 (1974), but that case is inapposite.  There, the defendant exercised his statutory right to appeal a conviction in a state district court to a state superior court, where he would be entitled to a trial de novo.  Id. at 22.  The Supreme Court held that the government could not respond to the defendant's statutory right to appeal by bringing a more serious charge against him prior to his trial.  Id. at 28-29.  Unlike the defendant in Blackledge, Boos does not allege that he exercised any such protected statutory or constitutional right prompting the government to prosecute him vindictively.

Additionally, Boos points to a number of cases for the proposition that a prosecutor should be barred from "bringing a second series of charges after he had the initial opportunity to do so."  However, these cases are also inapposite, as they all involve prosecutors bringing more serious criminal charges after the defendant had exercised a protected right.  See United States v. Groves, 571 F.2d 450, 453 (9th Cir. 1978) (rights under Speedy Trial Act); United States v. DeMarco, 550 F.2d 1224, 1227 (9th Cir. 1977) (statutory venue rights); Twiggs v. Superior Court, 667 P.2d 1165, 1169 (Cal. 1983) (refusing plea bargain); Murphy v. State, 453 N.E.2d 219, 223 (Ind. 1983) (motion for mistrial). As noted, Boos does not allege the exercise of any such protected right, much less does he allege that the government recharged him with more serious criminal offenses.

prosecutorial vindictiveness, we affirm the district court's denial of his motion to dismiss.

D. Costs

Finally, Boos claims that the district court erred in fining him $9000. Boos argues that he does not have the ability to pay the fine, and asks us to hold that any fines imposed by the district court must be consistent with his ability to pay. Ordinarily, we review a district court's decision to impose a fine under the Sentencing Guidelines for abuse of discretion. See United States v. Klein, 93 F.3d 698, 705 (10th Cir.), cert. denied, 117 S. Ct. 624 (1996). However, Boos did not object to the imposition of the fine at sentencing. As a result, we will not disturb the fine absent plain error. See United States v. Herndon, 982 F.2d 1411, 1419 (10th Cir. 1992).

The Sentencing Guidelines require the imposition of a fine "except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." U.S.S.G. § 5E1.2(a); accord Klein, 93 F.3d at 705. The sentencing court should consider, inter alia, "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources." U.S.S.G. § 5E1.2(d)(2). However, the Sentencing Guidelines do not require that the district court make a specific

finding about the defendant's ability to pay before imposing a fine. See United States v. Nez, 945 F.2d 341, 343 (10th Cir. 1991).

In this case, we find no plain error in the district court's imposition of a fine. At sentencing, Boos did not object to the fine, nor did he establish an inability to pay. Moreover, Boos conceded at the sentencing hearing that the district court had before it the financial information it needed to decide on a fine, stating, "[I]t's up to the Court, of course, if there's a fine or not a fine, and I'm not even going to address that issue because you've got the information there in front of you as to that." The district court decided on a fine of $9000, an amount within the applicable Sentencing Guidelines range. U.S.S.G. § 5E1.2(c)(3). Under the circumstances, we cannot say that the district court plainly erred. See Nez, 945 F.2d at 343 ("a sentencing court's failure to make explicit findings in support of imposing a fine is not plain error where the sentencing court had before it undisputed and unchallenged facts necessary to the imposition of a substantial fine").

## II. United States v. Gunwall, No. 97-6330

Gunwall appeals his convictions on four grounds. We address each in turn.

## A. Vindictive Prosecution

Gunwall appeals the district court's denial of his motion to dismiss on the ground of vindictive prosecution. He points to his guilty plea in a prior case in the Northern District of Oklahoma, where he was charged with conspiracy to violate § 7212(a), and with violating § 7212(a) by filing false UCC liens against IRS agents and by filing several false "Citizens Warrant[s] for Citizens Arrest" against IRS agents and other government officials. Gunwall argues that the prosecutors for the Northern and Western Districts of Oklahoma "orchestrated this series of prosecutions" because of his association with "an unpopular political group," presumably "We The People."

We find that Gunwall's claim does not satisfy the legal standards for vindictive prosecution. See supra Part I.C. Gunwall cites no evidence that his prosecution was brought to punish him for associating with tax protestors,[7] and he does not allege that the prosecution in this case was in retaliation for any protected rights exercised in the Northern District proceedings. Cf. United States v. Contreras, 108 F.3d 1255, 1262 (10th Cir. 1997) (citing United States v. Goodwin, 457 U.S. 368, 372 (1982)). As the prosecution in the Northern District and the one

---

[7]Citing his indictment, Gunwall does state that "the evidence shows that the government fully believed Mr. Gunwall was a 'tax protestor.'" However, while the indictment does associate Gunwall and Boos with "We The People," it does so in reference to the group leader's advocacy of filing UCC liens. Gunwall does not indicate how the reference evidences an improper prosecutorial purpose.

in this case involved different incidents, different victims, and, except for Gunwall, different defendants, each prosecution appears to have separate and legitimate bases. Thus, we find no vindictiveness or reasonable likelihood of vindictiveness. See United States v. Cardall, 885 F.2d 656, 666 (10th Cir. 1989) (declining to find vindictive prosecution because "[p]rosecutors have traditionally enjoyed discretion in deciding which of multiple possible charges against a defendant are to be prosecuted or whether they are all to be prosecuted at the same time"); United States v. Pungitore, 910 F.2d 1084, 1112 (3d Cir. 1990) ("to raise successfully a due process claim, the defendant must affirmatively establish vindictiveness, as the fact of multiple prosecutions, standing alone, does not prove an abuse of prosecutorial discretion").

B. Motion in Limine

Gunwall appeals the district court denial of his motion in limine to exclude evidence of his association with "We The People." He claims that such evidence was inadmissible because it was not relevant, see Fed. R. Evid. 402, and in any event because any probative value it may have had was substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. We review the district court's ruling on a motion in limine for abuse of discretion. See Den Hartog v. Wasatch Academy, 129 F.3d 1076, 1092 (10th Cir. 1997).

- 17 -

We find that the district court did not abuse its discretion in denying Gunwall's motion in limine. First, evidence of Gunwall's association with "We The People" was relevant. The district court permitted the government to adduce testimony that among the records of "We The People" was a list which included Gunwall's name, address, and phone number, and the court permitted testimony that the group's leader advocated filing UCC-1 financing statements against anyone with whom an individual had a grievance, in order to cloud their credit and clog the legal system. This evidence had a tendency to link Gunwall to his co-conspirator Boos, to connect them both to the UCC filings in this case, and to provide Gunwall with a motive for filing the liens. See Fed. R. Evid. 401 (evidence with any tendency to make existence of fact of consequence more or less probable is relevant). Second, any prejudicial effect from the evidence of Gunwall's association with "We The People" did not substantially outweigh its probative value. Gunwall does not offer support for his Rule 403 claim, and indeed the record would not support it. The testimony relating to "We The People" was brief, and was focused not on the group itself but on establishing the above factual points in a non-inflammatory manner. Accordingly, the district court properly denied Gunwall's motion in limine. See United States v. Sloan, 65 F.3d 861, 864 (10th Cir. 1995) (evidence of defendant's gang membership properly admitted as relevant

to show existence of conspiracy and relationship between defendant and other participants in indicted offense, and as more probative than prejudicial).

## C.  Definition of "Corruptly" in Jury Instruction

Gunwall claims that the district court erred in instructing the jury on the definition of "corruptly" under § 7212(a).  We conduct a <u>de novo</u> review of jury instructions "to determine whether, as a whole, they correctly stated the governing law and provided the jury with an ample understanding of the issues and the applicable standards."  <u>Harrison v. Eddy Potash, Inc.</u>, 112 F.3d 1437, 1442 (10th Cir. 1997), <u>vacated on other grounds</u>, 118 S. Ct. 2364 (1998).

The district court gave the following jury instruction on "corruptly":

> To act "corruptly" means to perform an act with the intent to secure an unlawful benefit to oneself or for another.  Diverting agents from their duties of collecting taxes from Dr. Boos creates an unlawful benefit.  Whether to draw this inference, and if you do, the strength of it are matters for you to decide.
> Motives such as a desire to protest or to take a petty vengeance against revenue officers do not in themselves supply the necessary intent, but the necessary intent may coexist with such motives.

(R. 65, no. 31.)  In this instruction, according to Gunwall, the district court "made a finding of fact that diverting the agents' attention created an unlawful benefit," and so "in essence . . . directed a verdict" against him.

- 19 -

Contrary to Gunwall's assertion, the district court did not make a finding of fact in stating that diverting agents from collecting taxes from Boos creates an unlawful benefit. Rather, the district court's interpretation of what constitutes an unlawful benefit for the purpose of construing "corruptly" under § 7212(a) is point of law. See United States v. Reeves, 752 F.2d 995, 1000 (5th Cir. 1985) (district court's construction of "corruptly" under § 7212(a) is an "interpretation of the law"). As a result, we find that the instruction did not impinge upon the jury's role as a fact-finder.[8] Moreover, the district court properly left to the jury the fact-finding role of whether to infer that the defendants diverted the agents for the unlawful purpose of hindering their collection of taxes from Gunwall. Consequently, we find no error in the challenged instruction.

---

[8]We note that the district court's construction of "corruptly" is legally correct. See United States v. Winchell, 129 F.3d 1093, 1099 (10th Cir. 1997) (stating that "a taxpayer's filing of frivolous documents against IRS agents constitutes a corrupt endeavor if the taxpayer 'meant to . . . intimidate officers or agents of the [IRS] from collecting his just debt of taxes due'") (quoting Reeves, 752 F.2d at 1002); Reeves, 752 F.2d at 998, 1001-02 (noting that "section 7212(a) is directed at efforts to bring about a particular advantage such as impeding the collection of one's taxes," and holding that filing of frivolous liens with intention of securing improper benefits or advantages for oneself or others "constitutes a prohibited corrupt endeavor under section 7212(a)").

D.  Sufficiency of Evidence

Finally, Gunwall appeals the district court's denial of his motion for judgment of acquittal, arguing that the evidence was insufficient to support a finding that he acted corruptly under § 7212(a).  To support his claim, Gunwall states that "[n]o evidence supports a finding Mr. Gunwall and Dr. Boos filed the liens for twenty Million dollars in silver for any reason other than to annoy the agents and the Internal Revenue Service."  In making his argument, Gunwall is

> faced with a high hurdle: in reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.

United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996) (internal quotations and citation omitted).

We hold the evidence was sufficient to support a finding that Gunwall acted corruptly under § 7212(a).  The evidence shows that the leader of "We The People" advocated the filing of UCC liens for disruptive purposes; that Gunwall and Boos were associated with the group, and that Boos involved the group in the filing of the liens; that the liens filed by Gunwall and Boos delayed the IRS' tax collection from Gunwall; and that the filings caused the government to expend time and resources to investigate and remove the liens.  Taking the evidence in the light most favorable to the government, we find that a reasonable jury could conclude

that Gunwall had the liens filed for the corrupt purpose of impeding the IRS'

collection of his taxes.  See Winchell, 129 F.3d at 1099; Reeves, 752 F.2d at 998,

1001-02.


## CONCLUSION

The convictions of Boos and Gunwall are both AFFIRMED.  The $9000 fine

imposed on Gunwall is also AFFIRMED.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge