[No. B226436. Second Dist., Div. Five. Sept. 27, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE TREJO, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of the Factual Background and Discussion, parts B. and C.

COUNSEL

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, James William Bilderback II and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MOSK, J.—

## INTRODUCTION

Following a jury trial, defendant and appellant Joe Trejo (defendant) was convicted of two counts of attempted second degree robbery and five counts of second degree robbery. On appeal, he contends that the unsuccessful and sometimes contentious plea bargain negotiations that took place prior to trial resulted in a denial of his due process right to a fair trial. Defendant also contends that the trial court committed prejudicial error when it denied his motion for a mistrial. The Attorney General disagrees with both of defendant's contentions and asserts that additional fees and assessments should have been imposed by the trial court.

In the published portion of this opinion, we hold that the plea bargain negotiations did not deprive defendant of a fair trial. In the unpublished portion of the opinion, we hold that the trial court did not abuse its discretion in denying the motion for mistrial and that the trial court is required to impose additional fees and assessments.

## FACTUAL BACKGROUND*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## PROCEDURAL BACKGROUND

The Los Angeles County District Attorney in an amended information charged defendant in counts 5 and 6 with attempted second degree robbery in

---

*See footnote, *ante*, page 646.

violation of Penal Code sections 664 and 211[3] and in counts 7 through 11 with second degree robbery.[4] The district attorney alleged that as to counts 5 through 11, defendant personally used a handgun within the meaning of section 12022.53, subdivision (b) and that in the commission and attempted commission of each of those offenses a principal was armed with a handgun within the meaning of section 12022, subdivision (a)(1). The district attorney further alleged that defendant had been convicted of two prior felonies within the meaning of section 1203. Defendant pleaded not guilty and denied the allegations.

Following trial, a jury[5] found defendant guilty as charged and found the firearm allegations true. The trial court denied probation and sentenced defendant to a total prison term of 40 years four months.

## DISCUSSION

### A. *Plea Negotiations*

#### 1. *Background*

During jury selection, the exchanges quoted below took place between and among the trial court, defendant, and the attorneys for the parties concerning ongoing plea negotiations.[6]

"The Court: Back in session outside the jury's presence. [¶] Counsel and the defendant are here. There were some settlement negotiations. [Prosecutor Fuhrman] was here, wanted an offer from [defendant]. He said 16 or 17, and [Prosecutor Fuhrman] declined that so we will proceed with jury selection. [¶] . . . [¶] The Defendant: I'm not saying that. You guys are playing with me with them deals. That's not even a deal. [¶] The Court: I used to be a federal prosecutor, and we used to do armed robberies. The standard offer for an armed robber, one bank, one bank, one robbery is 25 years. That's when I was a prosecutor. 25 years was the minimum sentence we ever asked for a bank robber committing one robbery. [¶] You're alleged to have committed a lot of robberies here. So that's why when [Prosecutor Fuhrman] said 28 years, I thought, boy, that's a light offer from [Prosecutor Fuhrman]. I thought he was gonna be asking for 35 years or 40. His offer of 28, in my

---

[3] All further statutory references are to the Penal Code unless otherwise indicated.

[4] Counts 1 through 4 were charged against codefendant Ivana Baresic.

[5] Defendant and Baresic were tried jointly at a consolidated trial, but two separate juries were empanelled to decide the case against each defendant.

[6] Prosecutor Fuhrman was the calendar deputy and Prosecutor O'Crowley represented the People during the trial. Fuhrman apparently handled certain plea negotiations with defendant's counsel that took place off the record prior to the discussions conducted on the record.

mind, is very lenient. [¶] [Defense Counsel]: *For the record, it's now 20.* [¶] The Court: 20 and you're turning it down? [¶] The Defendant: That's half my life. [¶] The Court: [Defendant], he offered you 20, and you're turning it down? [¶] [Prosecutor O'Crowley]: At 85 percent, which is 17 years. [¶] [Defense Counsel]: Which is 17 years. [¶] The Court: No one is playing with you if they are offering you 20. [¶] The Defendant: That's right, but I'm not getting no strike—well, I'm gonna have strikes, but they are not stricken, right? [¶] [Defense Counsel]: He is concerned about the fact that he would end up with strikes. There is no alternative to that based on the agreement that was proffered. It carries a risk, carries a substantial risk. [¶] The Defendant: I know they are strikes, but they are stricken strikes, you know. If I go to prison, any little thing, I get beat up and something happens, I'm gonna get another strike just on anything. That's like saying, here, take 20 years with two or three strikes, you gonna do life by the time you do a year in there. [¶] The Court: That may happen. [¶] The Defendant: I'm trying to get out there and work and have kids. [¶] The Court: We are having this conversation, but *it doesn't do any good. I'm not going to offer you 20. I wouldn't offer you 20.* [Prosecutor Fuhrman] *offered you 20, and you turned it down so there is really nothing to talk about because I don't think you should get 20.* [¶] [Prosecutor O'Crowley]: If I may add something, your Honor. [¶] The Court: Go ahead. [¶] [Prosecutor O'Crowley]: There is no way you're gonna come out of this case, in my opinion, with less than two strikes. You're going to go to prison with at least two strikes. The situation you're worried about, being in prison having two strikes behind you, I don't think there is any way to avoid that. The only thing we are talking about here is how much time you get going in. [¶] [Defense Counsel]: I think it's a phenomenal offer, given the exposure of 48 years. We're talking about, I think, seven counts, plus the car burglary, plus the probation violation issue. [(Defendant confers with his counsel off the record.)] [¶] The Defendant: If I could think about this offer? [¶] [Defense Counsel]: Could we continue picking a jury and, hopefully, we will· reach a resolution before tomorrow morning? [¶] The Court: We need to continue picking a jury. I have jurors outside. [¶] [Defense Counsel]: I understand. [¶] The Court: I have no control over the offer. I don't know if it's still on the table or will be, but we need to finish jury selection. So I'll ask the bailiffs to do what we need to do, and let's proceed with jury selection." (Italics added.)

The next day, defendant's counsel informed the trial court that Prosecutor Fuhrman was denying that a 20-year offer had been made, which information triggered the following colloquy: "The Court: We're back in session outside the jury's presence on [defendant's] case. [¶] [Defendant] is in the lockup, not before the court. [Defense counsel] *is here, and the calendar deputy* [Prosecutor Fuhrman], *is here.* [¶] Your request, [defense counsel], was what? [¶] [Defense Counsel]: Your Honor, yesterday afternoon I appeared before

this court and picked a jury. Towards the end of the day, before your Honor and your staff, [Prosecutor Fuhrman] and I and [Prosecutor O'Crowley] discussed the settlement of the case. I believe a record was made. I think the court reporter was here, and at some point in time, I, on the record put the 20-year offer from [Prosecutor Fuhrman]. The court looked at my client and said to my client, essentially, 'you're crazy not to accept it.' [¶] The Court: I didn't use the word 'crazy' but something along those lines. [¶] [Defense Counsel]: Something like that, it would be wiser to accept it, and that he was facing approximately 48 years if you combined both cases. My client asked if he could think about it until this morning, and that's where it ended. [¶] I walked in a few minutes ago, and [Prosecutor Fuhrman] said he never made any offer—that offer of 20. He said his offer was 28. I would rather—I've spoken to your clerk who was present during the entire proceedings. She advised me that the offer was 20 years. [¶] The Court: Isn't the main issue what's on the table now? [¶] [Defense Counsel]: No. The main issue was[,] was the offer made, number two, whether or not there was a time limit, and, number three, whether or not it was withdrawn. There was no time limit on it. [¶] The Court: I didn't hear a time limit. [¶] [Defense Counsel]: My client wanted to talk to his mom. I asked him before he left whether he could talk to his mother, you know, over the phone last night, and he said he believed he could. That was the end of it. [¶] The Court: Okay. [Prosecutor Fuhrman] is the 20-year offer still on the table so we can bring [defendant] down? [¶] [Prosecutor Fuhrman]: *There was never a 20-year offer given by the people in this case.* As I recall, I came in yesterday afternoon at the request of counsel. He began speaking with his client, and his client didn't want anything. He asked me to address his client at that time, and the client indicated he didn't want an offer. [¶] The Court: How did we get to 20 years? Because I remember discussing 20 years, and the issue was, in [defendant's] mind, that he had to plead to three counts as part of what was understood to be your offer, at least three. [¶] [Defense Counsel]: Correct. [¶] The Court: We even got to the details of how many counts and a number of 20. [Prosecutor O'Crowley], in fact, even stepped into the discussion and said, essentially, '[Defendant], you're going to be convicted of at least two strikes so the issue is not the strikes. The issue is how many years you're going to go behind the strikes.' [¶] So I clearly understood the offer you were making was 20 years. In fact, at one point, [defendant] was talking about something or something was going on, and the bailiff stopped you from leaving the courtroom. It was something unrelated to the plea discussions, and you said something to the effect, 'oh, I thought he had decided to accept the offer.' Accept what offer? [¶] [Prosecutor Fuhrman]: No, that was not at all what I said as I was leaving the courtroom. As I remember, I was stopped about something, I can't remember the particular detail, but I was sarcastically indicating, in essence, was he wasting my time again with another attempt at an offer? [¶] As I told [defense counsel] before, the original offer was 28 years. There was no point

in the people bidding against ourselves. I think there was a counter of 15 . . . which I summarily rejected. During the short conversation I had with [defense counsel] and the defendant, I think the defendant then said 17. Again, I said, 'no.' So if counsel is euphemistically thinking 20 was what he wanted to accomplish, that was never conveyed. [¶] The Court: Just a second. Just a second. [¶] [Prosecutor Fuhrman]: I remember specifically asking counsel directly if he had authority, and his response was, no, he had to speak with his client. So at no time yesterday did the people make an offer. [¶] The Court: If I were required to make a finding, my finding would be that the offer was made either explicitly or by accepting what was being discussed, the 20 years, three counts was discussed, and at no point did the D.A. correct the court—correct me or anyone else about the offer. [¶] So, in my recollection, when you were stopped by the bailiff, he stopped you because we were concerned that one of the jurors outside might see the defendant handcuffed. You said something to the effect of, 'is he changing his mind about accepting the offer?' It's clear in my mind that's what was said. There was no time limit put yesterday as to the offer. [¶] So is that offer of 20 years withdrawn, or is it still on the table? [¶] [Prosecutor Fuhrman]: *There was never an offer of 20 years.* The court was not privy to all the discussion so the court has no right to even be having this colloquy and making any determination whatsoever. If there is something on the record, that can certainly be read back and decided. Albeit all this nonsense regarding this discussion, the offer would have expired at sundown, anyway. There is no offer. There has been no offer. [¶] The Court: We will bring [the defendant] down and ask the clerk to call the D.A.'s office, and we need to speak with someone superior to [the prosecutor] because we have a clear misunderstanding that affects the interests of justice here. So, as soon as possible. [(Recess was taken.)]" (Italics added.)

After a recess, the trial court and counsel continued the plea bargain discussion as follows: "The Court: We're back in session outside the jury's presence. Counsel, defendant, and [Prosecutor Fuhrman], the calendar D.A., is here. [¶] I asked for his superiors from the D.A.'s office to be here because there was something unusual that's never happened in my career before, and I thought I should resolve it right away. But on second thought, it might be best just to get transcripts, and everybody can look at the transcripts and see what happened. [¶] My concern was that it was clear in my mind yesterday a 20-year offer, three counts was made to [defendant], and we had a long discussion on the record. I talked to [defendant] directly about that. I told him that I couldn't believe the D.A.'s office would make a 20-year offer. I said in the federal system, 25 years would be the minimum sentence that could be expected, and I went into some long colloquy with [defendant] because I couldn't believe the D.A. was making that offer. [¶] There was no corrections about the D.A. not making that offer. [Prosecutor O'Crowley] was here and

spoke directly to [defendant], telling him that the issue is not the number of strikes, he's gonna get two strikes, at least, the only issue is the number involved. So either I just totally misunderstood what was going on or someone didn't correct me when they should have corrected me as to what the offer was. It's a very important case, and everyone here, I think, believed the D.A. was making a 20-year offer. And if he wasn't, he should have told me after I told [defendant] he was being offered 20 by the D.A. [¶] [Prosecutor Fuhrman]: I read that part of the transcript, your Honor. I understand what the court is saying. No offer was ever made yesterday in terms of 20 years. As a matter of fact, no offer was made whatsoever. Counsel asked me earlier in the day if I would take 15, I was brought down for that purpose, and I said, 'no.' The colloquy was then would I take 17, I said, 'no.' [¶] *The court then relied on a statement when I was not here made by [defense counsel] that the offer was 20 years. That was never made.* The court also indicated in that transcript, the little bit that I've been allowed to see this morning because I wasn't allowed to see the rest—and I think that's patently unfair. I'm not sure why that occurred. But be that as it may, later in the day when the court was having the colloquy with the defendant, it was patently clear that he was not accepting it, and the court indicated to him that at that time the court didn't know if the offer was still open. [¶] There was a subsequent discussion between [defense counsel] and [Prosecutor O'Crowley] later in the day where [defense counsel] was even indicating by his acts and his words that he was not sure that offer was still open or if it even existed. [Prosecutor O'Crowley] can comment on that, if need be, nonetheless, the offer was not accepted, it's [¶] the next morning, there is no offer. [¶] [Defense Counsel]: May I be heard? [¶] The Court: Just briefly. *My position is the D.A. controls the offer. He says there is no offer, then there is no offer on the table.* But I just feel that both sides, the prosecutor and the defense, has to be really open to the court, and if I'm stating that the D.A. has made an offer of 'X' years and that's not true, I expect the party that knows the truth to correct me rather than have, in my opinion, a miscarriage of justice occur. That's all my concern is. If I was wrong, you should have said, 'Judge, we are not offering three counts at 20 years. You're mistaken. I don't know where you got that, Judge.' [¶] [Prosecutor Fuhrman]: It was a little hard for me to say that when I was not in the room. [¶] [Prosecutor O'Crowley]: Your Honor, that addresses me, really. I was surprised to hear [defense counsel] say 20 years because I was sitting here when the conversation took place. I didn't hear it. I intended to check with [Prosecutor Fuhrman] before anything would go forward after [defense counsel] said to the court that the offer was 20 years. [¶] I talked to [defense counsel] after when we were walking out of the courtroom and asked him whether [Prosecutor Fuhrman] had made a 20-year offer, and I told him I didn't hear it conveyed. And, [Prosecutor Fuhrman] is also correct, I also heard the court indicate that at the end of the day the court had no idea whether the offer that was described by [defense counsel] was

open or not. [¶] So while we certainly disagree about what happened yesterday, ultimately, the defendant did not avail himself of, you know, what was going on yesterday, and I think that sort of is the end of that." (Italics added.)

The plea bargain discussions concluded as follows: "The Court: Yes, briefly, [defense counsel]. [¶] [Defense Counsel]: Your Honor—[¶] The Court: I am going to order a transcript of all the discussion yesterday. [¶] [Defense Counsel]: In the transcript the court will find that [Prosecutor O'Crowley] even went so far as to discuss with my client, with the court, and with myself that the 20 years actually came out to 17 at 85 percent and that he would end up with three strikes. [¶] I personally no longer have any credibility with my client, nor with my client's family. I'm going to declare irreconcilable differences with my client on this case and ask to withdraw. [¶] The Court: That's denied. I apologize to the D.A. hierarchy here. If you want to state your appearances, you can, or not. [¶] [Defense Counsel]: Furthermore—[¶] The Court: Thank you very much. [¶] [Defense Counsel]: We now have a court that's going to hear this trial where the D.A., [Prosecutor O'Crowley], and, specifically, [Prosecutor Fuhrman] on the record has essentially called this court a liar. I don't see how we can have—we can have a trial that's fair to my client under those circumstances. It's an abomination, and I think that this court has to take control of this courtroom and relieve me and sanction the D.A. [¶] The Court: That's denied. We will start trial. Thank you very much. [¶] [Prosecutor Fuhrman]: My silence is in no way accepting the irreverent comments of the defense attorney, and I in no way feel that this court is lying about anything. This court may have heard things that weren't communicated to it properly by the defense, and that may have led the court to make certain statements. I think the counsel who made that comment ought to reexamine his own communicative ability before making the comments that were just made. [¶] The Court: We are in recess. Thank you."

Defendant contends that the plea negotiations created acrimony between the prosecutors and defense counsel, as well as between defendant and defense counsel. According to defendant, the prosecutors' conduct regarding the disputed 20-year offer affected the integrity of the plea bargaining process and contributed to defendant's rejection of a 28-year offer. Defendant suggests that such a situation can affect the fairness of the trial and that there was a denial of due process. He requests that under "these unusual circumstances . . . this Court should exercise its inherent power to reshape the judgment (Pen. Code, § 1260),[7] and remand to afford [defendant] the opportunity to take the 20-year deal discussed at length on the record."

---

[7] Section 1260 states as follows: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings

### 2. *Analysis*

■ " '[P]lea negotiations and agreements are an accepted and "integral component of the criminal justice system and essential to the expeditious and fair administration of our courts." [Citations.] Plea agreements benefit that system by promoting speed, economy, and the finality of judgments. [Citations.]' " (*People v. Feyrer* (2010) 48 Cal.4th 426, 436–437 [106 Cal.Rptr.3d 518, 226 P.3d 998].) "The process of plea bargaining which has received statutory and judicial authorization as an appropriate method of disposing of criminal prosecutions contemplates an agreement negotiated by the People and the defendant and approved by the court. [Citations.] Pursuant to this procedure the defendant agrees to plead guilty in order to obtain a reciprocal benefit, generally consisting of a less severe punishment than that which could result if he were convicted of all offenses charged. [Citation.] This more lenient disposition of the charges is secured in part by prosecutorial consent to the imposition of such clement punishment [citation], by the People's acceptance of a plea to a lesser offense than that charged, either in degree [citations] or kind [citation], or by the prosecutor's dismissal of one or more counts of a multi-count indictment or information. Judicial approval is an essential condition precedent to the effectiveness of the 'bargain' worked out by the defense and prosecution. [Citations.] But implicit in all of this is a process of 'bargaining' between the adverse parties to the case—the People represented by the prosecutor on one side, the defendant represented by his counsel on the other—which bargaining results in an agreement between them." (*People v. Orin* (1975) 13 Cal.3d 937, 942–943 [120 Cal.Rptr. 65, 533 P.2d 193].)

Defendant concedes that he never accepted the disputed 20-year offer and that he did not detrimentally rely on that offer. Defendant also concedes that there is no case law supporting his position, but nevertheless argues that under the "unique" circumstances in this case this court should require the trial court to allow defendant to accept a plea bargain to a 20-year sentence.

■ As an initial matter, the prosecutor was not obligated to make an offer; there is no constitutional right to a plea bargain. (*Weatherford v. Bursey* (1977) 429 U.S. 545, 561 [51 L.Ed.2d 30, 97 S.Ct. 837].) Moreover, plea bargaining is governed by principles of contract law (*Mabry v. Johnson* (1984) 467 U.S. 504, 507 [81 L.Ed.2d 437, 104 S.Ct. 2543], abrogated on other grounds in *Puckett v. United States* (2009) 556 U.S. 129 [173 L.Ed.2d 266, 129 S.Ct. 1423]), and under contract law, an offer may be revoked by the offeror any time prior to acceptance. (*T. M. Cobb Co. v. Superior Court* (1984)

---

subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

36 Cal.3d 273, 278 [204 Cal.Rptr. 143, 682 P.2d 338].) Thus, a prosecutor may withdraw from a plea bargain, or revoke or withdraw the offer, before the defendant pleads guilty or otherwise detrimentally relies on the bargain. (*People v. Rhoden* (1999) 75 Cal.App.4th 1346, 1352 [89 Cal.Rptr.2d 819]; see also *People v. McClaurin* (2006) 137 Cal.App.4th 241, 248 [39 Cal.Rptr.3d 887].)

Based on these authorities, defendant's contentions based on the plea bargain negotiations are not meritorious. The record may demonstrate that there was confusion about the disputed 20-year offer based on miscommunications and the involvement of two different prosecutors in the negotiation process.[8] But the confusion was cleared up within a day, and defendant took no action to his detriment in reliance on the disputed offer prior to the proceedings in which the matter was clarified. Even assuming there had been an offer, the prosecutor effectively revoked or repudiated it before it was accepted.

■ Although defendant's trial counsel made a request to be relieved as his counsel based on the failed negotiations, there is nothing in the record to suggest, much less establish, that those negotiations or their purported impact on his relationship with defendant and the prosecutors adversely affected defense counsel's performance. Defendant makes no specific complaint on appeal about his trial counsel's performance. And there is no indication in the record that the plea bargain discussions actually affected the trial. There is no suggestion of any prosecutorial vindictiveness (see *United States v. Goodwin* (1982) 457 U.S. 368, 371–372, 381 [73 L.Ed.2d 74, 102 S.Ct. 2485]; *Twiggs v. Superior Court* (1983) 34 Cal.3d 360, 368–369 [194 Cal.Rptr. 152, 667 P.2d 1165]) or other overt interference with trial counsel's defense (see *Barber v. Municipal Court* (1979) 24 Cal.3d 742, 757 [157 Cal.Rptr. 658, 598 P.2d 818] [deliberate effort to undermine the attorney-client relationship]; see also *Strickland v. Washington* (1984) 466 U.S. 668, 686–687 [80 L.Ed.2d 674, 104 S.Ct. 2052] [defense counsel's deficient performance may be caused by the Government when it "interferes" in defense counsel's ability to make "independent decisions about how to conduct the defense"]). Absent case law holding that the type of miscommunications and confusion that occurred during the bargaining process here warrants reversal of a conviction, we perceive no legal basis upon which to reverse the judgment.

B., C.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

[8] "In plea bargaining arrangements it is the responsibility of lawyers in the prosecutor's office to let ' "the left hand know what the right hand is doing" or has done.' " (*U.S. v. Hammerman* (4th Cir. 1975) 528 F.2d 326, 331.)

[*]See footnote, *ante*, page 646.

## DISPOSITION

The judgment of conviction is affirmed and the matter is remanded with instructions to the trial court to impose a $30 court security fee on each of the seven counts on which defendant was convicted and a $30 court facilities assessment on each of those seven counts.

Turner, P. J., and Kriegler, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 21, 2011, S197673. Werdegar, J., did not participate therein.