Filed 2/16/22  P. v. Hernandez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSEPH HERNANDEZ et al.,<br><br>    Defendants and Appellants. | E075338<br><br>(Super.Ct.Nos. 16CR018083, 16CR018949)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Knish, Judge.  Affirmed with directions.

Patrick Morgan Ford for Defendant and Appellant, Joseph Hernandez.

Law Office of Christopher Nalls and Christopher A. Nalls, under appointment by the Court of Appeal, for Defendant and Appellant, Christopher Navarrette.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendants and appellants Joseph Hernandez and Christopher Navarrette were tried together and convicted on charges, including first degree murder, relating to the fatal shooting of Roger Lazaro. The trial court sentenced Hernandez to 50-years-to-life, and it sentenced Navarrette to 52-years-to-life.

In this appeal, Hernandez contends that incriminating statements by Navarrette to a jailhouse informant should not have been admitted against him because doing so violated his Sixth Amendment confrontation clause rights and because the statements were not admissible under the hearsay exception for statements against penal interest. Hernandez also argues that the trial court erred by failing to instruct jurors to view Navarrette's statements to the informant with caution using CALCRIM No. 334, and by instructing on lying in wait as a theory of first degree murder. Finally, Hernandez asserts that the trial court abused its discretion by denying his motion filed pursuant to *People v. Romero* (1996) 13 Cal.3d 497 (*Romero*). Navarrette joins in Hernandez's arguments regarding the lying in wait instruction. Navarrette also argues that the prosecution violated his due process rights by refusing to allow him to accept a plea bargain, offered as a "package deal" contingent on both Hernandez and Navarrette accepting it, even though Hernandez rejected it.

We reject each of these arguments and affirm the judgments. In addition, the People have pointed out an error in Navarrette's abstract of judgment, which we direct the trial court to correct.

## I. BACKGROUND

On May 8, 2016, Hernandez and Navarrette confronted Lazaro in a liquor store parking lot. During the confrontation, Navarrette shot Lazaro three times with a semiautomatic handgun, killing him. The shooting was captured on surveillance video, which was played for the jury.

Immediately before the shooting, Lazaro pulled his truck into the liquor store parking lot. Navarrette and Hernandez drove past in a car a moment later (Navarrette driving, Hernandez in the front passenger seat), turned around, and then followed Lazaro into the parking lot. Navarrette stopped the car between Lazaro's truck and the front door of the store. As Lazaro walked towards the store, Hernandez opened his door of the car, Lazaro stopped and approached, and the two exchanged words. Lazaro then started walking back to his truck. As he did so, Navarrette got out of the car and opened fire. Hernandez and Navarrette then got back into the car and drove away.

At the joint trial of Hernandez and Navarrette, the prosecution presented evidence that the shooting was the culmination of an ongoing dispute between Hernandez and Lazaro, in which Lazaro's family had become embroiled. Hernandez believed Lazaro owed him money, and also was angry about Lazaro playing music from his truck too loudly, disturbing Hernandez and his girlfriend.[1] In the week before the shooting, the dispute had already turned physical. Hernandez had gone to Lazaro's family's house,

---

[1] Lazaro's family's house, where he often visited, was in the same neighborhood where Hernandez lived with his girlfriend.

3

where he had "sucker punched" Lazaro's brother and threatened the entire family. Hernandez later initiated, but lost, a fist fight with Lazaro. Navarrette was not personally involved in the dispute between Hernandez and Lazaro prior to the shooting. A jailhouse informant testified that Navarrette told him he had shot Lazaro because Hernandez told him to do so, and because he was aware that Lazaro had recently beaten up Hernandez.

Neither Hernandez nor Navarrette testified or presented any other form of affirmative case. Both argued that the shooting was in self defense or in defense of Hernandez.

The jury found Hernandez and Navarrette guilty of first degree murder (Pen. Code[2], §§ 187, subd. (a), 189, subd. (a), count 1). The jury also found Navarrette guilty of possession of a firearm by a felon (§ 29800, subd. (a)(1), count 2) and found true that Navarrette had personally and intentionally discharged a firearm causing death (§ 12022.53, subd. (d)). The trial court found true that Hernandez had previously been convicted of a strike offense (§§ 667, subds. (d)-(i), 1170.12, subds. (a)-(d)). The court sentenced Hernandez to 50-years-to-life, consisting of a term of 25-years-to-life for count 1, doubled by the strike prior. It sentenced Navarrette to 52-years-to-life, consisting of consecutive terms of 25-to-life for count 1, 25-years-to-life for the firearm enhancement, and two years for count 2.

---

[2] Undesignated statutory references are to the Penal Code.

## II.  DISCUSSION

A.  *Navarrette's Statements to Jailhouse Informant*

1. *Additional Background*

At trial, the prosecution's evidence included testimony from an informant recounting a July 2016 conversation he had with Navarrette while in the recreation yard of the jail where both were incarcerated.[3]  According to the informant, Navarrette volunteered that he had "caught . . . a hot one," meaning a murder charge.  Navarrette told the informant that his codefendant ("crimey"), whom the informant and Navarrette both called by the nickname "Carjack," had been in a fight with Lazaro, in which Lazaro "had gotten the better" of Carjack.  Navarrette recounted to the informant that during the encounter at the liquor store, Lazaro told Carjack and Navarrette:  "'Like if you guys want some more, you want some more.  Then if not, just leave me alone.'"  At that point, Carjack told Navarrette to shoot Lazaro ("Hey, pop this fool"), and Navarrette did.  Navarrette expressed to the informant that he thought his "messing with the gun" before the shooting had been "on camera."  It was.

The informant admitted that he had been actively looking for information that he could share with authorities.  He had been having problems with his probation officer— he was in jail on a probation violation—and he wanted a new one.  A correctional officer

---

[3]  The informant initially testified that he and Navarrette had a single conversation, but was confronted with an earlier statement to a detective, and then conceded that his current recollection was that there was "one main time" that they spoke, but they "probably talked about it afterwards," too.

had suggested that he could help the informant out with that problem in exchange for information. Nevertheless, the informant stated that Navarrette initiated the conversation about the murder, and Navarrette's comments were unprompted by any follow-up questions from the informant.

2. *Analysis*

a. *Confrontation Clause*

Hernandez argues that the admission of Navarrette's statements to the informant violated his confrontation clause rights. We find no such violation because Navarrette's statements to the informant were not testimonial.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." This confrontation clause is made applicable to the states via the Fourteenth Amendment. (*Pointer v. Texas* (1965) 380 U.S. 400, 401-402.)

In *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), the United States Supreme Court held that the confrontation clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." (*Crawford*, at pp. 53-54.) Only statements that are testimonial "cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." (*Davis v. Washington* (2006) 547 U.S. 813, 821 (*Davis*).) Citing a dictionary*, Crawford* defined "testimony" as "'[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'"

6

(*Crawford*, *supra*, at p. 51.)  The court declined, however, to "spell out a comprehensive definition" of when a statement is or is not testimonial.  (*Id.* at p. 68.)

Since *Crawford*, our Supreme Court has concluded that "a statement is testimonial when two critical components are present."  (*People v. Lopez* (2012) 55 Cal.4th 569, 581 (*Lopez*).)  "First, to be testimonial the out-of-court statement must have been made with some degree of formality or solemnity."  (*Ibid.*)  Second, a statement is testimonial if it was "given with the 'primary purpose of creating an out-of-court substitute for trial testimony'" or "made with the primary purpose of creating evidence for [the defendant's] prosecution."[4]  (*Ohio v. Clark* (2015) 576 U.S. 237, 250-251, 246; see also *People v. Rangel* (2016) 62 Cal.4th 1192, 1214-1215.)

The United States Supreme Court has characterized "statements made unwittingly to a Government informant" and "statements from one prisoner to another" as "clearly nontestimonial."  (*Davis*, *supra*, 547 U.S. at p. 825 [discussing *Bourjaily v. United States* (1987) 483 U.S. 171, 181-184, and *Dutton v. Evans* (1970) 400 U.S. 74, 87-89].)  California courts, including our Supreme Court, have done the same.  (*People v. Fayed* (2020) 9 Cal.5th 147, 169 [quoting *Davis*]; *People v. Gallardo* (2017) 18 Cal.App.5th 51, 67 (*Gallardo*).)  This general rule applies here.  There is no "degree of formality or solemnity" (*Lopez*, *supra*, 55 Cal.4th at p. 581) in a conversation between two inmates on

---

[4]  Additionally, the confrontation clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." (*Crawford*, *supra*, 541 U.S. at p. 59, fn. 9.)  This aspect of the analysis, however, is not at issue here; there is no dispute that Navarrette's statements to the informant were offered for their truth.

a jail recreation yard, even if one of those inmates is secretly an informant. There is also nothing in evidence to support the conclusion that the "'primary purpose'" of Navarrette's statements was to create "'an out-of-court substitute for trial testimony" or otherwise to "create[e] evidence for [the defendant's] prosecution." (*Ohio v. Clark*, *supra*, 576 U.S. at pp. 245-246.) Because Navarrette's statements to the informant were nontestimonial, their admission against Hernandez did not violate his confrontation cause rights.

Hernandez attempts to distinguish this line of case law on the ground that Navarrette "likely understood his statements could be used later at a criminal trial where a viable defense theory might be that [Hernandez] was the one who had the beef with the victim, and Hernandez was the one who spontaneously encouraged [Navarrette] to shoot the victim," so "[e]ven though [Navarrette] was the shooter, [Hernandez] was more responsible for the murder." This argument is unpersuasive for multiple reasons. For one, "he told me to do it" is not a "viable" defense to liability for murder, even if it may have some bearing at the penalty stage of a death penalty case. (See *Grimes* (2016) 1 Cal.5th 698, 718 (*Grimes*) [admission of sole responsibility for murder may be aggravating circumstance tending to justify imposition of death penalty, in accord with "commonsense notion that killers who act on their own are likely to be punished more severely than those who were encouraged or assisted by a confederate"].) On the contrary, in this case, evidence that Navarrette shot the victim because Hernandez

8

"spontaneously encouraged" him to do so tended to undermine Navarrette's primary defense, namely, the claim that he was acting in self defense or in defense of Hernandez.

Moreover, nothing in evidence shows that Navarrette was aware that he was talking to an informant and using the discussion to create evidence to support his defense. There is evidence that the *informant* was actively seeking information "from everybody all the time" because *he* knew that he could use such information for *his* benefit. It is not reasonable to infer from that premise, as Hernandez does in briefing, that inmates generally believe that all "other inmates are always trying to collect information that they can provide to the police in exchange for favors or benefits," let alone that Navarrette specifically understood and intended for his conversation with the informant to become evidence for his trial.

Hernandez's reliance on *Bruton v. United States* (1968) 391 U.S. 123 (*Bruton*) and *People v. Aranda* (1965) 63 Cal.2d 518 (*Aranda*) is misplaced for similar reasons. "Broadly stated, the *Aranda/Bruton* rule declares that a defendant is deprived of his or her Sixth Amendment right to confront witnesses when a facially incriminating statement of a nontestifying [codefendant] is introduced at their joint trial, even if the jury is instructed to consider the statement only against the declarant." (*Gallardo*, *supra*, 18 Cal.App.5th at p. 68.) "Under those circumstances, the trial court must grant separate trials, exclude the statement or excise all references to the nondeclarant defendant." (*Ibid.*) Nevertheless, after *Crawford*—and especially after our Supreme Court's discussion in *People v. Cortez* (2016) 63 Cal.4th 101 (*Cortez*)—the *Aranda/Bruton* rule

9

applies only to testimonial statements:  "'The [United States Supreme Court] unequivocally held 'that the confrontation clause applies only to testimonial hearsay statements and not to [hearsay] statements that are nontestimonial.'" (*Cortez*, *supra*, 63 Cal.4th at p. 129, quoting *Davis, supra,* 547 U.S. at p. 824; see *Gallardo*, *supra*, 18 Cal.App.5th at p. 69.)  For the reasons discussed above, Navarrette's statements to the informant were nontestimonial, so "binding high court precedent requires us to hold that the Sixth Amendment is inapplicable" and Hernandez's "confrontation clause claim therefore fails." (*Cortez*, at p. 129.)

b. *Hearsay Exception*

Hernandez contests whether Navarrette's statements to the informant fall within the hearsay exception for declarations against penal interest.  They do.[5]

---

[5] The trial court's ruling that Navarrette's statements were admissible as declarations against penal interest was made before trial, based on preliminary hearing testimony of the detective the informant spoke to and the prosecution's offer of proof as to what the informant would say if called to testify.  The informant's testimony at trial differed in some details from the pretrial offer of proof.  As relevant here, at trial, neither the prosecution nor the defense elicited from the informant any testimony that Navarrette said something to the effect of "'I don't even think [Hernandez] did anything wrong,'" which had been part of the prosecution's offer of proof.  Hernandez's arguments on appeal regarding the informant's testimony are based primarily on this difference.  In Hernandez's view, Navarrette's statements as described at trial look more like an attempt to shift blame to Hernandez than a declaration accepting full responsibility for murder. In our view, for the reasons discussed in this section, which focuses on the informant's trial testimony, the differences do not change the result of the analysis.  We acknowledge the People's contention that Hernandez forfeited any claim based on the difference between the informant's actual trial testimony and the information on which the trial court made its pretrial ruling, but we find it more expedient to address Hernandez's arguments on their merits.

Evidence Code section 1230 provides that a statement is not inadmissible hearsay if it "when made, . . . so far subjected [the declarant] to the risk of . . . criminal liability . . . that a reasonable man in his position would not have made the statement unless he believed it to be true."  The prosecution is required to show the declarant is unavailable, the statement was against the declarant's interests when made, and the statement was sufficiently reliable to warrant admission despite being hearsay.  (*People v. Grimes*, *supra,* 1 Cal.5th at p. 711.)  The exception's rationale is that "'a person's interest against being criminally implicated gives reasonable assurance of the veracity of his statement made against that interest,' thereby mitigating the dangers usually associated with the admission of out-of-court statements."  (*Ibid.*)  In determining whether a statement falls within Evidence Code section 1230, the trial court may consider not just the words spoken but the surrounding circumstances.  (*People v. McCurdy* (2014) 59 Cal.4th 1063, 1108.)  Our review is for abuse of discretion.  (*Grimes* at pp. 711-712.)

We find no abuse of discretion.  Navarrette was unavailable because he did not testify at trial and could not be compelled to do so.  His statements to the informant were against his penal interests not only as an admission to the shooting itself, but also as an admission of the mental state with which he acted; that he shot because Hernandez told him to "pop this fool," undermining the claim that he shot in self defense or in defense of Hernandez.[6]  Although Navarrette's description of the events implicated Hernandez as

---

[6]  Hernandez's words, as reported to the informant by Navarrette, do not necessarily foreclose a claim of self defense or defense of another—much would depend

*[footnote continued on next page]*

well as himself, it was nevertheless "'so far contrary to [Navarrette's] interests "that a reasonable man in his position would not have [admitted it] unless he believed it to be true."'" (*People v. Brown* (2003) 31 Cal.4th 518, 536.) And there is ample authority finding statements to a cellmate or other jailhouse informant may be sufficiently reliable to warrant admission despite being hearsay. (E.g., *People v. Dalton* (2019) 7 Cal.5th 166, 207-208 [statements to cellmate]; *People v. Arauz* (2012) 210 Cal.App.4th 1394, 1400-1401 [statements to jailhouse informant].)

Hernandez emphasizes case authority holding that "those portions of a confession inculpating others are not as inherently trustworthy as those portions that are actually disserving to the declarant's interests." (*Grimes*, *supra*, 1 Cal.5th 698, 713, discussing *People v. Leach* (1975) 15 Cal.3d 419, 439-441.) The statements at issue, however, are not "collateral assertions" that inculpated only Hernandez and not Navarrette. (*Grimes* at p. 713.) Rather, they are some of the strongest evidence that Navarrette committed murder, rather than an act of self defense or defense of Hernandez. To the extent Navarrette's statements could be interpreted as shifting some blame to Hernandez, Navarrette nevertheless assigned the most blame to himself by admitting he was the shooter and that the motive for the shooting was something other than self defense. (See *Cortez* , *supra*, 63 Cal.4th at p. 128 [exception applied as "'the portions of [the declarant's] statement that implicated [defendant] were in no way exculpatory' or 'self serving,'" and the declarant "'consistently assigned the most blame to himself by

on tone of voice—but they are no doubt open to interpretations that do not tend to support such defenses.

12

admitting he was the shooter, and he never attempted to shift blame to [defendant]'"]; see also *Grimes* at p. 711, fn. 3 ["'no other statement is so much against interest as a confession of murder'"].)  Perhaps circumstances could be imagined where a defendant's confession that he shot someone because his codefendant told him to would not be distinctly against the defendant's penal interests.  But this is not such a case.

The informant's hearsay testimony regarding Navarrette's statements was properly admitted against Hernandez under Evidence Code section 1230.

### c. *Instructional Error*

Hernandez contends that the trial court erred by failing to instruct the jury with CALCRIM No. 334, which among other things cautions the jury that an accomplice's testimony or out of court statements must be corroborated and must be viewed with caution.  As he acknowledges, however, our Supreme Court has held that such an instruction is not required where the statement at issue qualifies as a declaration against penal interest.  (*People v. Brown*, *supra*, 31 Cal.4th at pp. 555-556 (*Brown*).)  The *Brown* court reasoned that if an accomplice's statements are "made under conditions sufficiently trustworthy to permit their admission into evidence despite the hearsay rule," it follows that they are sufficiently reliable that the trial court "was not required to instruct the jury to view [the] statements with caution and to require corroboration."[7]  (*Brown*, *supra*, 31 Cal.4th. at p. 556.)

---

[7] We note that the jury *was* instructed, using CALCRIM No. 336, that the testimony of an in-custody informant should be viewed with caution and that such an informant's testimony must be corroborated.  In light of our conclusion here, we need not

*[footnote continued on next page]*

13

We have already rejected Hernandez's contention that Navarrette's statements to the informant should not have been admitted as declarations against penal interest. Under *Brown*, therefore, his claim that the trial court was required to instruct the jury with CALCRIM No. 334 also fails.

B. *Lying in Wait Instruction*

Over defendants' objection, the jury was instructed on lying in wait as one of two theories of first degree murder, deliberation and premeditation being the other.[8] Defendants contend that the instruction was erroneous because there is no substantial evidence of murder by means of lying in wait, and specifically no evidence of any substantial period of watching and waiting before a surprise attack. They emphasize that they pulled into the parking lot after the victim, and that the victim argued with Hernandez before the murder.

"We need not decide whether there was sufficient evidence of murder by means of lying in wait because . . . there was sufficient evidence of premeditation and deliberation." (*People v. Sandoval* (2015) 62 Cal.4th 394, 424.) "When a jury is instructed on two theories of first degree murder, a first degree murder verdict will be upheld if there is insufficient evidence as to one of the theories" (*ibid.*), at least "absent

_____

decide whether instructing with CALCRIM No. 336 would cure any error in omitting CALCRIM No. 334 or render such an error harmless.

[8] In accordance with CALCRIM No. 521, the jury was instructed that a defendant murdered by lying in wait if (1) "He concealed his purpose from the person killed"; (2) "He waited and watched for an opportunity to act"; and (3) "Then, from a position of advantage, he intended to and did make a surprise attack on the person killed."

an affirmative indication in the record that the verdict actually did rest on the inadequate ground" (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129 (*Guiton*)). Defendants raised no objection, either here or in the trial court, to the sufficiency of the evidence of deliberation and premeditation or to the jury's instructions on that theory of first degree murder. Moreover, to find first degree murder on a lying in wait theory, the jury had to find the defendant waited and watched for a period of time "substantial enough to show a state of mind equivalent to deliberation or premeditation." (CALCRIM No. 521; see *People v. Sandoval*, *supra*, 62 Cal.4th at p. 424 ["a conclusion that there was insufficient evidence of lying-in-wait murder does not mean there was no premeditation and deliberation"].) Thus, not only was there sufficient evidence of premeditation and deliberation, but the record compels the conclusion that the jury actually made the finding that defendants acted with premeditation and deliberation. In such a circumstance, it would be inappropriate for us to disturb the jury's decision that the killing was first degree murder.

Hernandez's and Navarrette's reliance on principles applicable to instructions containing "'legally incorrect'" theories of guilt is misplaced. (See *People v. Chiu* (2014) 59 Cal.4th 155, 167, citing *People v. Guiton* (1993) 4 Cal.4th 1116, 1128-1129 ["When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find that the verdict was based on a valid ground]"; *People v. Aledamat* (2019) 8 Cal.5th 1, 7.) Neither defendant has proposed any reason why the instruction on lying in wait was

15

contrary to law.  Rather, they have only contended that it was not applicable because it was not supported by the evidence.  Hernandez and Navarrette have therefore demonstrated, at most, an "'inadequacy of proof . . . of a kind the jury is fully equipped to detect'" (*ibid.*), and have not shown that reversal is required.

On this record, any arguable error in instructing the jury on lying in wait as a theory of first degree murder was harmless.

## C.  Romero *motion*

### 1. *Additional facts*

Hernandez's prior strike offense is a robbery conviction from 1998, when he was still a teenager.[9]  The trial court denied his written *Romero* motion.  Hernandez contends that decision was an abuse of discretion.  We find no abuse of discretion.

A trial court may dismiss a prior strike conviction under section 1385 "in furtherance of justice."  (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529-530.)  In considering whether to do so, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)

---

[9]  In the trial court and in briefing on appeal, Hernandez's counsel has referred to him as being 18 years old at the time of the strike offense.  It appears from our record that he was in fact 19.  The difference is immaterial.

There is a "'strong presumption that any sentence that conforms to [the sentencing norms established by the three strikes law] is both rational and proper.'" (*In re Large* (2007) 41 Cal.4th 538, 550.)

We review the denial of a *Romero* motion for abuse of discretion. (*Williams*, *supra*, 17 Cal.4th at p. 162.) "'Under that standard an appellant who seeks reversal must demonstrate that the trial court's decision was irrational or arbitrary. It is not enough to show that reasonable people might disagree about whether to strike one or more of [the] prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*People v. Romero* (2002) 99 Cal.App.4th 1418, 1434.) "Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony* (2004) 33 Cal.4th 367, 378.)

The record does not support Hernandez's contention that the trial court's decision was irrational or arbitrary. His strike conviction and his current conviction are both for crimes of violence. His criminal history also includes other, lesser crimes of violence, including a 2002 misdemeanor conviction for battery (§ 242) and a 2005 conviction for

assault with a deadly weapon (§ 245, subd. (a)(1)). A reasonable interpretation of this criminal history is a pattern of violence that has only escalated over time, culminating in the murder of Lazaro. Even if, as Hernandez argues, the record could have supported a different conclusion, the trial court's decision was well within the bounds of reason.

Hernandez faults the trial court for failing to consider relevant mitigating factors, including his age when the strike offense was committed, its remoteness in time, and the severity of the penalty if the strike were not stricken. The record only demonstrates, however, that the trial court did not accord those mitigating factors the weight Hernandez would have preferred, not that it did not consider them. The trial court noted for the record that it had considered the written submissions of both Hernandez and the prosecution, and explained its reasoning for denying the *Romero* motion, albeit briefly. It also expressly acknowledged Hernandez's counsel's oral comments, agreeing that counsel had made several "good point[s]."[10] It just did not, in the end, agree with Hernandez that those factors should be given controlling weight, particularly in light of the severity of the current offense. (See *Williams*, *supra*, 17 Cal.4th at p. 161

---

[10] The trial court responded to Hernandez's counsel's arguments about the remoteness of the prior strike and Hernandez's youth at that time as follows: "It was a long time ago and there has been a lot of time that has passed." The court also commented that counsel had made a "good point" regarding the "harshness of this particular strike . . . . adding another 25 years is quite severe." Nevertheless, the court continued: "On the other hand . . . we have a senseless killing in this case and I think it stretches *Romero* beyond the bounds of reasonableness in such a case to find Mr. Hernandez is outside the scope of the law. [...] So based, just to make a record, based largely on the nature of the offense, the severity of the offense, the Court will respectfully deny the *Romero* motion."

[appropriate factors to consider include "the nature and circumstances" of the defendant's "present felonies"].) The trial court's decision to deny his *Romero* motion was neither irrational nor arbitrary, and therefore was not an abuse of discretion.

D. *Plea Offer*

1. *Additional Background*

Prior to trial, the prosecution proposed a plea deal whereby Navarrette would be sentenced to 25-years-to-life and Hernandez would be sentenced to 15-years-to-life. The offer, however, was a "package deal," conditioned on both defendants accepting it. Navarrette was willing to accept. Hernandez, however, was not, and trial proceeded.[11]

2. *Analysis*

Navarrette contends that he has "a due process right to accept the plea bargain offered to him," even though Hernandez rejected the deal so the condition on the offer was not satisfied.[12] As he acknowledges, however, in *People v. Barnett* (1980) 113 Cal.App.3d 563 (*Barnett*), the Court of Appeal rejected similar arguments, holding that a defendant's due process rights are not violated by the defendant's inability to accept a package plea offer because a codefendant has declined it. (*Id.* at pp. 573-574; see also *In re Ibarra* (1983) 34 Cal.3d 277, 288-290 [totality of the circumstances test applies to

---

[11] Later the same day, Navarrette also proposed that he would be willing to plead guilty if the court would indicate its willingness to strike the gun enhancement and impose a term of 25-years-to-life, but the court declined to do so.

[12] The People contend this argument was forfeited because it was not raised in the trial court. Navarrette has offered no argument to the contrary. Nevertheless, we find it more expedient to address the claim on the merits.

determine whether a package deal plea bargain was unduly coerced]; *People v. Conerly* (2009) 176 Cal.App.4th 240, 249 [package plea offers are valid so long as their terms are not coercive]; *Liang v. Superior Court* (2002) 100 Cal.App.4th 1047, 1056 [same].)

Navarrette argues that we should not follow *Barnett* and related case law because he was "forced to give up a valuable constitutional right—the right to plead guilty to an offense and avoid going to trial." (See *Barnett*, *supra*, 113 Cal.App.3d at p. 564 ["To us, the significant factor is whether in the plea bargain a defendant has given up a valuable constitutional right . . . or otherwise detrimentally relied on the promises made in the plea bargain"].) But that is not so. At any point, Navarrette could have entered an *unconditional* guilty plea. (See *People v. Reza* (1984) 152 Cal.App.3d 647, 654 ["it is error to reject competent defendant's offer of an unconditional plea of guilty in a noncapital case where there is a factual basis for the plea"].) He just chose not to do so. Navarrette further proposes that he was "deprived of the chance to accept a generous plea bargain." He had, however, no constitutional right to accept the plea offer, which the prosecution was free to withdraw because its conditions were not met. (See *People v. Trejo* (2011) 199 Cal.App.4th 646, 655-656 ["[T]he prosecutor [i]s not obligated to make an offer; there is no constitutional right to a plea bargain. [...] [A] prosecutor may withdraw from a plea bargain, or revoke or withdraw the offer, before the defendant pleads guilty or otherwise detrimentally relies on the bargain"].)

Navarrette also contends that the prosecutor's decision to argue at sentencing that Navarrette should receive a sentence dramatically greater than the 25-years-to-life offered

20

at the plea bargaining stage supports an inference of prosecutorial vindictiveness.  (See, e.g., *In re Bower* (1985) 38 Cal.3d 865, 873 (*Bower*) [discussing "constitutional protection against prosecutorial vindictiveness"].)  It does not.  No inference that a defendant was "penalized for exercising his constitutional rights" arises from the "mere fact . . . that following trial defendant received a more severe sentence than he was offered during plea negotiations." (*People v. Szeto* (1981) 29 Cal.3d 20, 35.)  The same principle applies here, even though it was *Hernandez*'s exercise of his constitutional right to a trial that caused *Navarrette's* plea negotiations to fall through.

Moreover, our Supreme Court has recognized that there may be legitimate reasons for the prosecution to insist on a "'package deal'" plea bargain.  (See *In re Ibarra*, *supra*, 34 Cal.3d at p. 289, fn. 5.)  As particularly relevant here, the Supreme Court observed that the prosecutor is "placed in a difficult position should one defendant plead and another go to trial, because the defendant who pleads may become an adverse witness on behalf of his codefendant, free of jeopardy." (*Ibid.*)  We are not persuaded, therefore, that it would be appropriate to apply any presumption of prosecutorial vindictiveness here, as Navarrette proposes.  As such, the prosecution was not required to show any "objective change in circumstances or in the state of the evidence" to overcome such a presumption and thereby justify its arguments at sentencing.  (*In re Bower*, *supra*, 38 Cal.3d at p. 879.)

Navarrette has not demonstrated any violation of his due process rights.

21

E. *Navarrette's Abstract of Judgment*

Navarrette's abstract of judgment does not reflect that he was sentenced to two consecutive indeterminate terms of 25-years-to-life, one for count 1 and the other for the firearm enhancement pursuant to section 12022.53. That section of the document was, it seems, inadvertently left blank. This clerical error should be corrected. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment"].)

### III. DISPOSITION

The judgments are affirmed. We remand to the trial court with directions to correct Navarrette's abstract of judgment to accurately reflect his sentence, which includes an indeterminate term of 25-years-to-life for count 1 and a consecutive indeterminate term of 25-years-to-life for the firearm enhancement pursuant to section 12022.53, subd. (d), in addition to the determinate term of two years on count 2, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

McKINSTER
Acting P. J.
SLOUGH
J.

22